**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Founders Bank, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 12-cv-05198 |
| CHICAGO TITLE INSURANCE COMPANY, et al., | ) ) ) ) ) | Judge Andrea R. Wood |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Federal Deposit Insurance Corporation ("FDIC"), acting as receiver for Founders Bank, has sued Defendants Chicago Title Insurance Company and Chicago Title and Trust Company (together, "Chicago Title Entities" or "Chicago Title"), for their conduct as the escrow agents for four "flip" real estate transactions. Specifically, the FDIC claims that the Chicago Title Entities acted negligently and breached contractual and fiduciary duties in their roles as closing agents. The Chicago Title Entities, in turn, have brought third-party claims for contribution and indemnification against Douglas Shreffler, an Illinois lawyer who was a policy-issuing agent at Chicago Title Insurance Company. In anticipation of the scheduled jury trial, the parties filed a total of 15 motions *in limine*. The Court ruled on those motion in an Order dated August 18, 2017. This Memorandum Opinion further explains the  reasons for the Court's rulings on those motions. As a reminder, the Court's pretrial rulings are necessarily preliminary and may be altered even if nothing unexpected happens at trial. *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006).

## I.      FDIC's Motions *in Limine*

### A.      FDIC's Motion *in Limine* No. 1 (Dkt. No. 269)

The FDIC anticipates that the Chicago Title Entities will argue at trial that they are not liable for the losses resulting from the subject flip transactions because of intervening factors relating to the economic downturn that occurred during the same time period. The Chicago Title Entities have proffered the opinions of their accounting expert, Mark J. Hosfield, in support of this theory. The FDIC seeks to bar Hosfield from testifying as an expert on the grounds that he is not qualified and his opinions are not reliable.

Federal Rule of Evidence 702 governs the admissibility of expert evidence in federal court. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a)      the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)      the testimony is based on sufficient facts or data;
> (c)      the testimony is the product of reliable principles and methods; and
> (d)      the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, expert testimony must not only assist the trier of fact, it must also demonstrate sufficient reliability. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). "[T]he district court serves as a 'gatekeeper' whose role is to ensure that an expert's testimony is reliable and relevant." *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014). The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), laid out four factors that courts may use to evaluate the reliability of expert testimony: (1) whether the expert's conclusions are falsifiable; (2) whether the expert's method has been subject to peer review; (3) whether there is a known error rate associated with the

technique; and (4) whether the method is generally accepted in the relevant scientific community. *Id.* at 593–94. This list is neither exhaustive nor mandatory and, ultimately, reliability is determined on a case-by-case basis. *Textron*, 807 F.3d at 835.

Here, the Court first concludes that Hosfield is sufficiently qualified to render his opinions on economic damages. Hosfield has a master's degree in management from Northwestern University's Kellogg Graduate School of Management and he did two years of additional coursework in accounting and business law at Southern Illinois University. (Dkt. No. 270 at 33–34 of 79.) He is a Certified Public Accountant and a Certified Management Accountant with over 30 years of experience in finance, accounting, and economic analysis, during which time he has performed numerous damages calculations. (*Id.*) Indeed, he has extensive experience in damages calculations in real estate contexts. (*Id.*) The FDIC points to the fact that Hosfield is not a licensed appraiser or contractor. But Rule 702 does not require any particular type of qualification and the FDIC does not explain why it is necessary for Hosfield to be a licensed appraiser or contractor to formulate an appropriate damages calculation in this case. In sum, the Court finds that Hosfield is sufficiently qualified to render his opinions under Rule 702's standards. Any vulnerabilities in Hosfield's resume are the type that may be adequately tested through cross-examination.

The FDIC also argues that, even if Hosfield is qualified, his opinions are unreliable. Hosfield offers two opinions: (1) that the damages incurred by Founders Bank in connection with the four transactions were caused by, *inter alia*, the economic downturn after the purchase of the buildings; and (2) that even if the Chicago Title Entities caused Founders Bank's damages, those damages are less than claimed because "if Founders [Bank] would have executed a loan for an amount commensurate to the first sale transaction for each property, any damages to Founders

[Bank] would be limited to the difference between the amount Founders [Bank] lost from the loans had they made loans on the first sale transaction." (FDIC Mot. *in Limine* No. 1 at 2, Dkt. No. 269.)

With respect to the first opinion, the FDIC contends that the date cited by Hosfield suggests that the Chicago real estate market began to decline in January 2008, yet all of the subject loans had defaulted by this point in time. Thus, the according to the FDIC, under Hosfield's own analysis the economic downturn could not have caused the losses. But looking at Hosfield's expert report, he actually states that the first signs of the economic downturn started in early 2007. (Hosfield Expert Rep., Dkt. No. 270 at 22 of 79.) This date predates the earliest of the defaults on the four subject properties in June 2007. Moreover, the amounts of the deficiency judgments on the four subject properties were set by the credit bids made on the properties, and those credit bids were made in December 2007, April 2008, and June 2008. Thus, Hosfield's opinion appears to be that the economic downturn starting in early 2007, and accelerating in 2008, was a major factor in the damages suffered by Founders Bank on the defaulted loans as measured by the deficiency judgments.

The FDIC also argues that Hosfield's first opinion is deficient because it fails to take into account evidence that the values of the subject properties were inflated prior to their closing transactions. But Hosfield's opinions do not appear to be inherently inconsistent with such evidence. And while the FDIC may believe that Hosfield's views are flawed and ultimately incorrect, this is precisely the sort of criticism that may be addressed adequately through cross-examination at trial and presentation of a rebuttal expert witness.

In challenging his second opinion, the FDIC argues that Hosfield's assumption that Founders Bank would have executed loans for the lower-priced first sale transactions is pure

speculation. In reaching his conclusions, Hosfield examined the nature of the loans and assumed in his damages calculation that, given that Founders Bank executed loans on the higher-priced transactions, it would have executed loans for the lower-priced transactions. That assumption is *prima facie* plausible and otherwise not so inherently unreliable such that it cannot even be presented to a jury. The FDIC will be permitted to challenge Hosfield's assumption through cross-examination and rebuttal testimony at trial.

For these reasons, the Court denies the FDIC's Motion *in Limine* No. 1.

**B.**     **FDIC's Motion *in Limine* No. 2 (Dkt. No. 271)**

The FDIC also seeks to bar evidence regarding the June 26, 2006 purchase and conversion of a property located at 6317 North Sacramento, in Chicago, Illinois ("Sacramento transaction"). The FDIC argues that this evidence is irrelevant and highly prejudicial, and thus should be excluded pursuant to Federal Rules of Evidence 402 and 403. The Chicago Title Entities respond that the Sacramento transaction is relevant because it involves the same elements as the four subject transactions, including the same parties and professionals, as well as the same structure. Thus, the Chicago Title Entities intend to use the Sacramento transaction to show that flip real estate transactions can be successful.

While the Chicago Title Entities may argue that flip transactions are not inherently doomed for failure, the details of the Sacramento transaction are simply not relevant to the issues in this case. The Sacramento transaction closed months after the four subject transactions were closed, and it is unclear from the pleadings whether the same individuals were involved in both the Sacramento transaction and the subject closings. If the Chicago Title Entities are permitted to start introducing instances of "legitimate" flip transactions, then on what basis could the FDIC be prevented from introducing evidence of other "fraudulent" flip transactions? More importantly,

based on the record before the Court, it is unclear whether or not the Sacramento transaction was fraudulent itself—if it was, deeming the transaction "successful" would be misleading and confusing for the jury. Introducing evidence regarding the Sacramento transaction and allowing the parties to argue over what conclusions can be drawn from it would raise the oft-cited prospect of a trial within a trial. The risk of unnecessary distraction and confusion clearly and substantially outweighs any potential probative value the evidence may have. Accordingly, the FDIC's motion to exclude evidence and argument regarding the Sacramento transaction is granted.

### C.    FDIC's Motion *in Limine* No. 3 (Dkt. No. 285)

The FDIC further seeks to bar the Chicago Title Entities from arguing that the FDIC's settlement with Jo Jo Real Estate Enterprises, LLC ("PVS") should set off any damages awarded against the Chicago Title Entities. Such a damages set off is governed by the Illinois Joint Tortfeasor Contribution Act ("JTCA"), 750 Ill. Comp. Stat. 100/2(c), which states, in relevant part:

> When a release . . . is given in good faith to one or more persons liable in tort arising out of the same injury . . . it reduces the recovery on any claim against the others to the extent of any amount stated in the release . . . or in the amount of the consideration actually paid for it, whichever is greater.

According to the FDIC, the JTCA does not automatically grant the right to a set off for a good-faith settlement. The FDIC contends that the JTCA is inapplicable here because the injuries and damages that resulted from PVS's deficient appraisals are completely separate and distinct form the injuries and damages incurred due to the Chicago Title Entities' actions as escrow agents. Because the injuries and damages are not the same, the FDIC argues that its settlement with PVS is not relevant to the damages it may be awarded as to the Chicago Title Entities.

In order for the JTCA to apply, both PVS and the Chicago Title Entities must be "liable in tort" for the "same injury." *Id.* According to the Illinois Supreme Court, "the proper focus of the 'same injury' requirement is not the timing of the parties' conduct which created the injury, but the injury itself." *People v. Brockman*, 592 N.E.2d 1026, 1030 (Ill. 1992). Additionally, "in order for contribution to lie, at least some type of culpable conduct must exist which contributed to plaintiff's injuries." *Giordano v. Morgan*, 554 N.E.2d 810, 815 (Ill. App. Ct. 1990).

Here, the alleged injuries to Founders Bank are the losses experienced after the purchasers of the four subject transactions defaulted on their loans. PVS allegedly contributed to those losses by misrepresenting the values of the subject properties. And according to the FDIC, the Chicago Title Entities contributed to the losses by, among other things, failing to notify Founders Bank about the existence of flip transactions and misrepresenting the true sales prices of the subject properties. Because both PVS's and the Chicago Title Entities' acts contributed to the same injury, the Chicago Title Entities are conceivably entitled to a set off as a result of the FDIC's settlement with PVS.

The FDIC also argues, however, that even if the right to a set off is appropriately raised by the Chicago Title Entities, it should be the subject of a post-trial proceeding and not an issue presented to the jury. The Court agrees. Raising the set-off issue before the jury would necessarily involve a discussion of the PVS settlement. PVS's liability is not before the jury and any discussion of their settlement terms would be both irrelevant and unduly prejudicial. As such, the FDIC's motion is granted in part and denied in part. The motion is granted to the extent that the Chicago Title Entities will be precluded from arguing to the jury that there should be a set off or mentioning to the jury PVS's settlement; the motion is denied insofar as the set off may

be addressed post-trial, if the jury renders a verdict in favor of the FDIC against the Chicago Title Entities.

**D.     FDIC's Motion *in Limine* No. 4 (Dkt. No. 272)**

The FDIC anticipates that the Chicago Title Entities will argue at trial that they are not liable for losses resulting from the subject transactions because the Chicago Title Entities followed the governing escrow trust instructions as those instructions were understood in the industry. Toward this end, the FDIC expects the Chicago Title Entities to elicit opinion testimony from current and former employees Nancy Castro, Patricia Butler, Melissa Conn Anderson, and Michael Lisanti about "escrow procedures and practices." (FDIC's Mot. *in Limine* No. 4 at 2, Dkt. No. 272.) The FDIC seeks to exclude such testimony because it is expert opinion testimony within the scope of Federal Rule of Evidence 702 and, as none of these witnesses were disclosed as experts by the Chicago Title Entities, Federal Rule of Evidence 701 requires exclusion.

As an initial matter, it is somewhat unclear exactly what subject matter is encompassed by the FDIC's phrase "escrow procedures and practices" that the FDIC seeks to exclude. The FDIC identifies in the declaration of Castro certain claims about "'typical' escrow instructions;" "the 'general' duties of escrow agents;" "industry usage;" "the 'usual' customs of [the Chicago Title Entities];" "the 'limited scope' of [the Chicago Title Entities'] duties;" "what the subject files 'show' or 'suggest;'" and "how the subject contracts are understood in the 'real estate industry.'" (*Id.* at 3–4 (citing Ex. 9 to Defs. Resp. to FDIC's Stmt. of Mat. Facts at ¶¶ 2–13).)

The Court observes that some of the proffered testimony might not even be opinion testimony. For example, if the employees testify, based on their own perceptions and experiences, about the practices and procedures those employees followed at the Chicago Title

8

Entities and the content of contractual provisions employed by the Chicago Title Entities, that may be fact testimony (and not opinion or expert testimony at all) and thus not within the purview of Rules 701 and 702.

However, insofar as the employees intend to testify more generally about escrow industry practices, customs, and understandings or express opinions about whether the Chicago Title Entities complied with those practices, customs, and understandings in performing their work on the subject transaction, the Court agrees with the FDIC that such testimony would be opinion testimony potentially based on "specialized knowledge" of those in the escrow industry. Testimony about the intricacies of the escrow industry and the obligations and customs of escrow agents is beyond the scope of "an untrained layman," and instead constitutes specialized knowledge within the scope of Rule 702. *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002). Thus, in order for the Chicago Title Entities to elicit such expert testimony, the Chicago Title Entities were required to disclose the employee witnesses as experts. *See* Fed. R. Civ. P. 26(2). And the Chicago Title Entities did not do so. (Defs.' Memo. in Opp. to FDIC Mot. *in Limine* No. 4 at 2, Dkt. No. 299 (recognizing that the Chicago Title Entities did not disclose employee witnesses as expert witnesses).)

The Chicago Title Entities argue that, even if the testimony is expert opinion testimony, exclusion is not required because allowing the testimony would not prejudice the FDIC. In particular, the Chicago Title Entities note that the employees were deposed at length and that Castro submitted a long declaration on the topics about which the FDIC complains. (*Id.* at 9–10.) This argument is unpersuasive. With the witnesses not having been designated as experts, the FDIC might not have probed the foundations of their opinions. As such, there is no record on which to determine if these witnesses' testimony meets the strictures of Rule 702. This would

unfairly allow the Chicago Title Entities to circumvent Rule 702. Moreover, the Chicago Title Entities have already designated an expert, James B. Rosenbloom, on the topics of the escrow industry and escrow agents' duties and practices. Thus, the Chicago Title Entities would suffer no apparent prejudice in restricting the employee witnesses' testimony to facts and lay opinion. Indeed, allowing the employee witnesses to testify about the escrow industry and escrow agents' duties and practices could prove unnecessarily cumulative, in light of Rosenbloom's testimony on those very subjects.

The FDIC's Motion *in Limine* No. 4 is thus granted in part and denied in part. The Chicago Title Entities are barred from introducing expert or opinion testimony by its current and former employees concerning typical or usual escrow industry practices, customs, and understandings. However, they may testify as fact witnesses based on their personal knowledge of the transactions at issue and the practices, customs, and understandings followed by the Chicago Title Entities.

### E.     FDIC's Motion *in Limine* No. 5 (Dkt. No. 280)

The FDIC has filed a motion to bar Gary K. DeClark from testifying as an expert witness on behalf of the Chicago Title Entities. The Chicago Title Entities previously sought to have DeClark testify as an expert regarding appraisals. But after the FDIC objected that DeClark had been disclosed as an expert only by PVS (a former defendant who has settled with the FDIC and will not be involved in the jury trial) and not by the Chicago Title Entities themselves, the latter withdrew their opposition to the FDIC's motion to bar DeClark from testifying. (*See* Dkt. No. 348.) Accordingly, the FDIC's Motion *in Limine* No. 5 is granted without opposition.

**F.      FDIC's Motion *in Limine* No. 6 (Dkt. No. 281)**

The Chicago Title Entities have indicated that they will seek to admit into evidence

certain environmental reports concerning the subject properties. The Chicago Title Entities also

previously indicated that they intended to call as a trial witness Thomas Doyle, whose company

authored those reports. The FDIC seeks to bar Doyle from testifying, arguing that he should not

be permitted to testify as an expert witness because he was not disclosed as such and that he

cannot testify as a fact witness because he has no first-hand knowledge regarding any issue

relevant to this case.

In response to the FDIC's motion, the Chicago Title Entities have clarified that they only

intended to call Doyle as a witness to authenticate the environment reports; as the FDIC does not

question the authenticity of those documents, Doyle's testimony on that topic is unnecessary.

(Defs.' Memo. in Opp. to FDIC Mot. *in Limine* No. 6 at 2, Dkt. No. 302.) The Chicago Title

Entities further represent that they do not intend to call Doyle to testify on the subject properties'

values or sales. (*Id.*) Thus, the Court understands the Chicago Title Entities to be representing

that they no longer intend to call Doyle as a trial witness. Accordingly, the FDIC's Motion *in

Limine* No. 6 is denied as moot.

**G.      FDIC's Motion *in Limine* No. 7 (Dkt. No. 283)**

The FDIC has also moved to exclude argument and testimony relating to the failure of

Founders Bank, settled claims against former Founders Bank directors and officers, and

criticisms of lenders or the lending industry generally. The FDIC asserts that such evidence is

irrelevant and unduly prejudicial. Specifically, with respect to the failure of Founders Bank and

the settled claims against its former directors and officers, the FDIC argues that the Chicago Title

Entities would use this evidence only to argue that Founders Bank's other past transgressions

make it more likely that the bank was a careless lender with respect to the subject transactions in this case. According to the FDIC, this kind of propensity evidence is prohibited by the Federal Rules of Evidence. *See* Fed. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

### 1. Founders Bank's Contributory Negligence

The Chicago Title Entities contend that evidence of Founders Bank's own careless conduct supports a contributory negligence defense. Specifically, they argue that Founders Bank disregarded information in its possession about the subject transactions. A general principal of receivership provides that the receiver's rights as plaintiff are subject to the same claims and defenses as the received entity. *See, e.g.*, *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 798–99 (6th Cir. 2009). As such, the negligence claims that the FDIC asserts as receiver of Founders Bank are subject to a defense of contributory negligence based on Founders Bank's actions, if the Chicago Title Entities can support such a defense. The Chicago Title Entities thus seek to introduce evidence of both Founders Bank's practices and banking industry practices generally.

The Court agrees with the Chicago Title Entities that evidence of Founders Bank's own practices is relevant and admissible to show that their actions contributed to their losses. As for evidence of banking industry practices generally, such evidence may be relevant to show whether Founders Bank's failure to follow its own industry standards contributed to its losses, but only if introduced through proper means, *i.e.*, such as through properly disclosed and supported expert witness testimony.

In addition to evidence of Founders Bank's practices, the Chicago Title Entities also seeks to prove contributory negligence by introducing two letters sent by the FDIC to Founders Bank. (Ex. 3 to Mot. *in Limine* No. 7, Dkt. No. 284.) As noted by the FDIC, the letters were sent in connection with those parties' efforts to resolve the FDIC's claims short of litigation. Evidence of settlements or compromises is not admissible to prove the validity of a disputed claim. *See* Fed. R. Evid. 408(a). That is precisely how the Chicago Title Entities want to use the content of the letters here. The Chicago Title Entities argue that the letters nonetheless should be admitted because "the policy against admission of settlement discussions and agreements . . . is inapplicable because the Chicago Title Entities does not seek to use those settlements against the officers and directors but rather against their accuser, the FDIC." (Resp. Mot *in Limine* No. 7, Dkt. No. 303 at 9.) The Chicago Title Entities cite no authority to support this argument, and this Court is not aware of any. Indeed, the argument is inconsistent with the plain language of Federal Rule of Evidence 408, which states that settlement correspondence "is not admissible—on behalf of ***any party***—either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). The letters are properly excluded.

### 2. Criticisms of Lenders or the Lending Industry

With regard to the FDIC's related request for the Court to exclude criticisms of lenders or the lending industry generally, the Chicago Title Entities concede that it does not intend to argue that the banking industry was riddled with incompetence and corruption during the relevant time period. However, according to the Chicago Title Entities, evidence regarding the downturn in the real estate market is relevant to damages. The Court agrees and therefore will not preclude the Chicago Title Entities from discussing the downturn in the market as a potential factor affecting damages.

### H.    FDIC's Motion *in Limine* No. 8 (Dkt. No. 273)

The FDIC also seeks to bar evidence or argument that, directly or indirectly, relates to the Chicago Title Entities' allegations of spoliation or missing documents. The Chicago Title Entities previously have accused the FDIC of evidence spoliation and even filed a motion asking the Court to sanction the FDIC on account of that alleged spoliation. (Defs.' Mot. Spoilation Sanctions, Dkt. No. 146 (sealed).) The Court denied this motion. The Court based this decision on a variety of factors, including the failure by the Chicago Title Entities to establish prejudice; the fact that the FDIC did not have a duty to preserve some of the documents; and, in some cases, a failure to show that the allegedly missing documents ever existed.

Now, having been denied spoliation sanctions, the Chicago Title Entities seek to argue at trial that certain relevant documents are "missing." But although the Chicago Title Entities continue to claim that significant important evidence has not been produced, they fail to identify any specific documents that existed but are now missing, instead speculating that the FDIC has failed to produce "loan committee minutes, directors' board minutes, and attachments to loan presentations." (Resp. Mot. *in Limine*, Dkt. No. 313 at 3–4.) Because the Chicago Title Entities have not shown that there are, in fact, documents relevant to this case that have gone missing, any suggestion that the FDIC has lost or failed to retain documents would be unduly prejudicial. The Chicago Title Entities also will not be permitted to suggest that the contents of any purportedly missing documents would support their case, as that would be pure speculation. Accordingly, the FDIC's motion is granted. That said, the Chicago Title Entities will be permitted to question witnesses in the ordinary course about whether, based on their personal knowledge, certain documents were created or maintained.

## I.     FDIC's Motion *in Limine* No. 9 (Dkt. No. 275)

The FDIC also seeks to exclude any testimony or argument at trial to the effect that mortgage broker Wellington Mortgage or its employee Matthew Bowker were agents of Founders Bank and that their knowledge of the suspect nature of the subject transactions may be imputed to Founders Bank or the FDIC.

The FDIC's principal argument for exclusion is that there is no evidence that Wellington Mortgage or Bowker were, in fact, agents of Founders Bank or the FDIC, and therefore any such testimony or argument should be prohibited under Federal Rules of Evidence 402 and 403 as irrelevant and prejudicial. Without admissible evidence to support an agency relationship between Founders Bank, on the one hand, and Wellington Mortgage or Bower, on the other, the FDIC is correct. But if Chicago Title Entities can adduce admissible testimony that Wellington Mortgage or Bowker were agents of Founders Bank and that Wellington Mortgage or Bowker knew the true nature of the subject transactions, such evidence would be relevant to the Chicago Title Entities' defense. Thus, the FDIC's Motion *in Limine* No. 9 is denied subject to the Chicago Title Entities' ability to adduce admissible evidence sufficient to establish that the mortgage broker and its employer were in fact agents of Founders Bank.

## J.     FDIC's Motion *in Limine* No. 10 (Dkt. No. 286)

Finally, the FDIC asks the Court to bar argument regarding the accuracy or admissibility of the state court's deficiency judgments. This Court previously held that the FDIC is limited to recovering the sum of the deficiency judgments that Founders Bank obtained at the foreclosure sales of the subject properties. *See Fed. Deposit Ins. Corp. v. Chicago Title Ins. Co.*, No. 12-cv-05198, 2016 WL 5276346, at *9 (N.D. Ill. Sept. 9, 2015). Now, the FDIC argues that the Chicago Title Entities cannot challenge the accuracy of the credit bids after it unambiguously asked the Court to set the value of the subject properties based on those credit bids. The Chicago

Title Entities counter by arguing that only the FDIC is bound by the deficiency judgments as its maximum loss amount. According to the Chicago Title Entities, not only are they not bound by the deficiency judgments, those judgments may not be used as evidence because they are inadmissible hearsay.

First, the Court addresses the FDIC's argument that the Chicago Title Entities are estopped from arguing that the credit bids are inaccurate because they already admitted the accuracy of the bid in their Answer and their motion for partial summary judgment. "[J]udicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Keller v. United States*, 58 F.2d 1194, 1198 n.8 (7th Cir. 1995). Statements made by counsel in briefing documents can also be judicial admissions, depending on the circumstances. *See United States v. One Heckler-Koch Rifle*, 629 F.2d 1250, 1253 (7th Cir. 1980) (statement in brief, although neither a pleading nor an affidavit, arguably may be treated as an admission); *Miller v. Fryzel*, No. 12-cv-10160, 2014 WL 3509491, at *4 (N.D. Ill. July 15, 2014) ("The Court may consider this representation in Miller's response brief [to defendant's motion to dismiss] to be a judicial admission."); *Pierce v. City of Chicago*, No. 09-cv-1462, 2012 WL 401026, at *3 (N.D. Ill. Feb. 7, 2012) (statements plaintiff made in support of his motion for leave to amend his complaint are judicial admissions).

Even if the statements by the Chicago Title Entities in their summary judgment briefing were treated as judicial admissions, they would not prevent the Chicago Title Entities from litigating the accuracy or admissibility of the state court's deficiency judgments. The statements in the summary judgment briefs are not unequivocal admissions that the credit bids conclusively resolved the values of the subject properties for purposes of determining damages in this case. Instead, it is clear from the summary judgment briefing that the Chicago Title Entities only

admitted that the credit bids conclusively resolved the values of the properties for purposes of determining the FDIC's damages. As such, the Chicago Title Entities never admit that it or anyone else besides the FDIC should be bound by the credit bids.

With regards to the Chicago Title Entities' statement in their Answer that the FDIC's damages "are reduced by the amounts of the credit bids," this also is not a judicial admission. The relatively ambiguous statement in the Answer is not the kind of "deliberate, clear and unambiguous" statement that would qualify as a judicial admission. *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010). That the Chicago Title Entities previously stated that the FDIC's damages are ***reduced*** by the amount of the credit bids does not prevent them from now arguing that the subject properties are worth ***more*** than the credit bids.

Second, the Court assesses whether the deficiency judgments are inadmissible hearsay. Generally, "civil judgments are said not to be usable in subsequent proceedings as evidence of the facts underlying the judgment; for as to those facts, the judgment is hearsay." *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987). Further, the public records exception "does not apply to judicial findings of act." *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994). For the residual hearsay exception to apply, the FDIC must demonstrate: "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." Fed. R. Evid. 807(a). The Seventh Circuit has held that the residual exception must be narrowly construed. *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998) ("We begin by noting this circuit's emphasis on narrowly construing the residual provision to prevent it from becoming the exception that swallows the hearsay rule."). The FDIC

has not demonstrated that the residual exception is applicable to the deficiency judgments, and therefore the Court will not apply this exception to the hearsay rule.

Finally, the Court will not take judicial notice of these state court records because the value of the properties is "subject to reasonable dispute." *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016) (quoting *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997)). Notably, where a property is obtained by the foreclosing lender for a partial credit bid and there is no fraud or irregularity in the foreclosure proceeding, the amount of the lender's successful credit bid "is deemed to be the conclusive measure of the property's value for purposes of determining the value of any deficiency." *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, No. 03-cv-6508, 2006 WL 695467, at *11 (N.D. Ill. Mar. 13, 2006) ("*Freedom I*"). However, based on the case law, this deficiency judgment serves to limit the **lender** from claiming greater losses, and does not prevent another party from arguing that the losses are too high. *See, e.g.*, *id.* at *14 (holding that the lender "will not be able to recover damages to the extent that it tendered successful credit bids in the Illinois foreclosures."). While a lender is prevented from claiming greater losses than the deficiency judgment due to collateral estoppel, an individual who was not a party to the deficiency lawsuit cannot be bound by that judgment. *See Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir. 1999) (noting that collateral estoppel requires that "the party against whom estoppel is asserted was a party or in privity with a party in the prior action"). Because the Chicago Title Entities have not yet had the opportunity to fully litigate the accuracy of the credit bids, it will be given this chance at trial. The FDIC's motion is denied.

## II. Chicago Title's Contested Motions *in Limine*

### A. Chicago Title's Motion *in Limine* [No. 1] to Exclude Certain Memos, Reports, and Consent Decrees from Evidence at Trial (Dkt. No. 274)

The Chicago Title Entities have filed a motion to bar the FDIC from introducing into evidence certain memoranda, bulletins, consent decrees, expert reports, and other documents referring to flip transactions, escrows, or fraud prevention. The Chicago Title Entities argue that the FDIC's proposed exhibits are irrelevant, unduly prejudicial, repetitive, and will mislead the jurors. Additionally, according to the Chicago Title Entities, some of the exhibits are inadmissible hearsay and settlement documents. This motion is granted in part and denied in part. The Court addresses the admissibility of each set of proposed exhibits in turn.

#### 1. Memoranda Regarding Flips, Escrows, and Fraud

The Court denies the motion to bar memoranda regarding flips, escrows, and fraud that were prepared by the Chicago Title Entities. Those documents are relevant to establish the Chicago Title Entities' practices and procedures. Any differences between the practices and procedures described in the documents and those utilized during the case at hand can be adequately addressed through cross-examination. However, any documents not created by the Chicago Title Entities are hearsay if offered for the truth of the matter asserted. Nonetheless, there may be some circumstances under which the documents may be presented to the jury— such as if one of the expert witnesses relies on them in forming an opinion—and thus the Court will reserve ruling on the documents until observing how the documents are proposed to be used at trial.

#### 2. Consent Decrees and Documents Referring to the Consent Decrees

Under Federal Rule of Evidence 408, evidence of compromises is not admissible to prove the validity of a disputed claim. Fed. R. Evid. 408(a); *see also Zivitz v. Greenburg*, No. 98-cv-

5350, 1999 WL 1129605, at *3 (N.D. Ill. Dec. 3, 1999) (noting that settlement agreements and consent decrees are generally inadmissible). Nonetheless, the FDIC seeks to admit certain consent decrees into evidence, arguing that they are admissible to show the industry standard for fraud detection and prevention. Even if these documents were admissible for this purpose, they would be more prejudicial than probative. Fed. R. Evid. 403. As such, they are excluded.

### 3.      Expert Reports from the *Sportsmen*'s Contracting Case

The expert reports from the *Sportsmen* contracting case are hearsay. *See Redenbaugh v. Residence Inn by Marriott, LLC*, No. 11-cv-3174, 2013 WL 1986382, at *2 n.2 (N.D. Ill. May 10, 2013). Because the FDIC has provided no reason why the reports fall under an exception to the rule excluding hearsay, Fed. R. Civ. P. 802, they are properly excluded.

### B.      Chicago Title's Motion *in Limine* [No. 2] to Exclude Orders, Reports, and Judgments in Actions Against the Borrowers and Guarantors (Dkt. No. 277)

In another motion, the Chicago Title Entities seek to bar the FDIC from offering or referring to the state court deficiency judgments regarding the subject properties. In response, the FDIC argues that the Chicago Title Entities' motion should be denied for several reasons: (1) they have already made judicial admissions that the credit bids conclusively resolved the values of the properties; (2) the Chicago Title Entities have failed to provide any evidence that the properties were worth more than Founders Bank's credit bids; and (3) the documents are not inadmissible hearsay.

As discussed above, however, only the FDIC is bound by the deficiency judgments and therefore estopped from re-litigating the validity of the credit bids as establishing a limit on the damages it may recover. *See Freedom I*, 2006 WL 695467, at *14 (a lender "will not be able to recover damages to the extent that it tendered successful credit bids in the Illinois foreclosures"). Although the FDIC is bound by these deficiency judgments, it cannot bring them into evidence

as they are inadmissible hearsay. *See Greycas*, 826 F.2d at 1567. Meanwhile, the Chicago Title Entities are not bound by the deficiency judgments because they were not parties to the earlier proceedings; and therefore they may challenge the validity of the credit bids. None of the previous statements by the Chicago Title Entities cited by the FDIC are admissions that would prevent it from challenging the credit bids. Although the Chicago Title Entities have not yet provided argument or evidence regarding the invalidity of the credit bids, the Court will not preclude them the opportunity to do so at this stage in the proceedings.

### C.     Chicago Title's Motion *in Limine* [No. 3] to Exclude References to "Shadow Closings" and "Illegitimate Transactions" (Dkt. No. 278)

The Chicago Title Entities also ask the Court to exclude evidence and testimony from the FDIC's experts that refer to the subject transactions as "shadow closings" and "illegitimate transactions." (Dkt. No. 278 at 1.) The motion is granted in part and denied in part.

With respect to the term "shadow closings," the FDIC agrees not to use the term. (Dkt. No. 307 at 2.) Instead, the FDIC proposes using the terms "lower-priced escrows" and "higher-priced escrows," which the Chicago Title Entities agree is acceptable. (*Id.*; Dkt. No. 329 at 1–2.) Thus, that portion of the motion is granted and the FDIC will not introduce any references to "shadow closings."

The motion is denied with respect to the term "illegitimate transactions." The Court does not agree that the term "illegitimate" is unduly prejudicial. To the contrary, allegations that the Chicago Title Entities engaged in transactions that were not sanctioned by common industry practice for the purpose of defrauding Founders Bank form the core of the FDIC's case. It will hardly be shocking to the jury to hear that the FDIC considers those transactions to have been "illegitimate"—indeed, that is one of the less inflammatory words that the FDIC could seek to use to describe the transactions. *See United States v. Manos*, 848 F.2d 1427, 1436 (7th Cir. 1988)

("[L]abelling the falsity a lie or the teller of the falsity a liar does not make the reasonable inference unduly prejudicial."). The Court also notes that the challenge to these references by the Chicago Title Entities occurs in the context of the FDIC's proffered expert testimony. But the Chicago Title Entities do not challenge the experts or their opinions under Rule 702. Rather, the Chicago Title Entities seek to police the words that the FDIC's experts may use in expressing their conclusions. It is telling that the Chicago Title Entities' own expert, James Rosenbloom, uses the term "illegitimate," stating that not all flips are inherently "fraudulent or illegitimate." (Ex. 2 to FDIC's Br. in Opp. to Defs.' Mot. *in Limine* to Exclude Certain Memos, Reports, and Consent Decrees at 7, Dkt. No. 304.) The Court thus concludes that both sides have used the term "illegitimate" in discussing the subject transactions and that the term is not unduly prejudicial in this context.

### D. Chicago Title's Motion *in Limine* [No. 4] to Prohibit Plaintiff from Referring to Douglas Shreffler as Chicago Title's "Agent" (Dkt. No. 279)

The Chicago Title Entities seek to bar the FDIC from referring to Douglas Shreffler as its "agent," noting that Shreffler was actually an independent "title agent" and an independent "policy-issuing agent." (Dkt. No. 279 at 1–2.) In response, the FDIC agrees not to refer to Shreffler as a general agent of the Chicago Title Entities but instead to refer to him only as its "policy-issuing agent." (Dkt. No. 310 at 1.) The Chicago Title Entities do not believe this concession to be sufficient and seek to exclude any implication that Shreffler "performed escrow services for [the Chicago Title Entities] or acted as [the Chicago Title Entities'] agent for any purpose other than issuing title commitments and polices, and from implying that [the Chicago Title Entities are] responsible for any conduct by him by virtue of his [] agency [with the Chicago Title Entities]." (Dkt. No. 332 at 3–4.)

The Court concludes that minimal, if any, prejudice will result from allowing the FDIC to refer to Shreffler accurately as a policy-issuing agent for the Chicago Title Entities. To prevent any confusion among the jurors, the Chicago Title Entities may introduce evidence regarding the nature of Shreffler's relationship with them and the scope of his duties. If necessary, the Court will issue appropriate jury instructions to clarify that the use of the term "agent" in describing Shreffler's relationship to the Chicago Title Entities should not be understood to indicate a legal relationship of agency between the Chicago Title Entities and Shreffler.

**E. Chicago Title's Motion *in Limine* [No. 5] to Exclude the FDIC from Contending at Trial that Chicago Title Failed in Fulfilling a Duty to Prevent Impersonation or Forgery (Dkt. No. 288)**

The Chicago Title Entities have also moved the Court to bar the FDIC from contending at trial that the Chicago Title Entities failed to prevent forgery and impersonation. The Chicago Title Entities contend that exclusion is warranted because the FDIC does not allege failure to prevent forgery and impersonation in its second amended complaint, and thus allowing the FDIC to introduce evidence and argument regarding such a claim at trial will prejudice the Chicago Title Entities because they did not conduct vigorous discovery on these issues.

The Court finds the FDIC's claims that certain of the subject transactions were tainted by forgery and impersonation to be sufficiently related to the allegations in the second amended complaint such that those claims may be presented to the jury. The second amended complaint alleges that "[the Chicago Title Entities were] required to exercise ordinary care in supervising the closings of the Subject Transactions and notify Founders Bank of circumstances indicating fraud." (Sec. Am. Compl. ¶ 147, Dkt. No. 47.) Furthermore, throughout the second amended complaint the FDIC discusses the Chicago Title Entities' breach of their duties. (*Id.* ¶¶ 134, 142, 152.) Evidence and argument that the Chicago Title Entities' breached their duties by failing to

prevent forgery and impersonations are fully consistent with these allegations—fleshing out details of the ways in which the Chicago Title Entities allegedly failed. Additionally, despite their contentions to the contrary, the Chicago Title Entities had ample opportunity to conduct discovery on the issues of forgery and impersonation, including taking the depositions of the two individuals involved. Therefore, the Court denies the Chicago Title Entities' motion.

ENTERED:

Dated:  August 21, 2017

_____
Andrea R. Wood
United States District Judge