IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Federal Deposit Insurance Corporation as Receiver for Founders Bank,<br><br>    Plaintiff,<br><br>v.<br><br>Chicago Title Insurance Company, *et al.*,<br><br>    Defendants. | Case No.: 12-cv-05198<br>Honorable Judge Andrea R. Wood<br><br>**PLAINTIFF'S COMBINED MOTION AND SUPPORTING BRIEF REQUESTING ENTRY OF JUDGMENT IN THE AMOUNT OF $3,790,695 PLUS PRE-JUDGMENT INTEREST** |

Pursuant to Federal Rule of Civil Procedure 50(b), Plaintiff Federal Deposit Insurance Corporation as Receiver for Founders Bank ("Plaintiff" or "FDIC-R") respectfully moves this Court for judgment as a matter of law in favor of FDIC-R and against Defendant Chicago Title Insurance Company ("Defendant" or "Chicago Title") with respect to the damages sustained by FDIC-R, in the amount of $3,790,695. In the alternative, pursuant to Federal Rule of Civil Procedure 59(e) (which may be invoked prior to entry of judgment, *see infra*), FDIC-R respectfully requests an adjustment of the jury's damages award on each of FDIC-R's claims to $3,790,695.[1] In addition, in conjunction with this Court's ultimate entry of judgment under Rule 58(d), FDIC-R respectfully requests an award of pre-judgment interest on FDIC-R's damages, which is mandated by 12 U.S.C. § 1821(*l*), and also is independently available under state law.

FDIC-R's motion should be granted. First, the only damage amount that can be reasonably drawn from the evidence introduced at trial and the jury instructions is $3,790,695. Thus, this Court may properly enter judgment as a matter of law or make an upward adjustment

---

[1] In doing so, FDIC-R has not withdrawn, nor does it intend to withdraw, its pending Motion For Leave To Inspect Jury Binders (Dkt. 379), although granting the two adjustments that the FDIC-R requests in the instant motion could moot the motion for leave. FDIC-R also reserves the right to seek any and all post-judgment relief once judgment has entered.

to the damages award when entering judgment. Second, under both federal and Illinois law, FDIC-R is entitled to pre-judgment interest. Under 12 U.S.C. § 1821(*l*), an appropriate pre-judgment interest award to FDIC-R is mandatory. In addition, Illinois law provides an independent basis for pre-judgment interest with respect to FDIC-R's breach of fiduciary duty claim, and the equities of this case strongly support such an award.

I.    BACKGROUND

Before trial, over FDIC-R's objections, this Court concluded that under Illinois law, FDIC-R's damages were "limited to the amounts of the deficiency judgments that Founders obtained at the foreclosure sales of the Subject Properties," or $3,880,686.91, despite actual losses of more than $6 million. *See* Mem. Op. (Dkt. 183) at 18. Specifically, in response to Chicago Title's motion for partial summary judgment, this Court held that the Illinois credit bid rule limited the amount of damages that FDIC-R could seek against Chicago Title, concluding that "[i]f the FDIC establishes liability, the FDIC's recovery from the Chicago Entities will be limited to the sum of the deficiency judgments that Founders obtained at the foreclosure sales of the subject properties." *See* Dkt. 183 at 1. In doing so, this Court reduced the amount of FDIC-R's potential recovery to only $3,880,686.91. *Id.* at 7. Later, ruling on motions in limine, this Court carefully defined the evidence that the parties could introduce at trial on damages. With respect to FDIC-R, this Court declined to take judicial notice of the loss amounts reflected on the face of the deficiency judgments and precluded the deficiency judgments from being introduced as evidence. *See* Mem. Op. on Motions In Limine (Dkt. 352) at 17-18. At the same time, this Court held that "[b]ecause the Chicago Title Entities have not yet had the opportunity to fully litigate the accuracy of the credit bids, it will be given this chance at trial." *Id.* at 18. Both of these rulings are reflected in pre-trial orders that the parties submitted and the Court entered

(specifically, each party's damage itemization). *See* Proposed Joint Final Pretrial Order (Dkt. 287) at 31-35. Thus, the accuracy of Founders Bank's credit bids was the sole basis at trial on which Chicago Title could challenge the amount of loss sustained by FDIC-R.

Consistent with this Court's pre-trial rulings and the pre-trial order, FDIC-R presented evidence at trial proving the actual amount of loss sustained on the subject loans, as reflected in the deficiency judgments. *See, e.g.*, Ex. 1 (transcript excerpts), Trial Tr. Vol. 3B, Aug. 24, 2017, 591:20-602:9. On the basis of this evidence, FDIC-R sought $3,790,695 in damages.[2] Chicago Title, in contrast, failed to offer any evidence at trial challenging the sufficiency of Founders Bank's credit bids, nor did it otherwise dispute the amounts of the deficiency judgments on the subject loans. Instead, Chicago Title attempted to prove that its conduct was not a proximate cause of the losses – an argument the jury rejected – and that Founders Bank was contributorily negligent – an argument that, as a matter of law, does not decrease Chicago Title's liability to FDIC-R. Chicago Title presented no other evidence on the amount of actual loss sustained by FDIC-R. Thus, the only damage evidence submitted to the jury demonstrated total losses of $3,790,695.

On September 14, 2017, the jury found that FDIC-R proved all of the required elements for each of its claims for breach of contract, breach of fiduciary duty, negligence, and negligent misrepresentation, and that FDIC-R had sustained damages of $1,450,000 on each of these claims. *See generally* Verdict Form (Dkt. 376).[3]

---

[2] This reflects FDIC-R's voluntary $90,000 reduction in damages sought from the original deficiency amount on the Bissell Loan because four months after the foreclosure, Founders Bank sold the Bissell Property for $90,000 more than its credit bid. *See* Ex. 1, Trial Tr. Vol. 3B, Aug. 24, 2017 at 600:14-24. Founders sold each of the remaining subject properties at a substantial loss. *See* Dkt. 183 at 4-5.

[3] The Verdict Form was filed by the Court as a Restricted Document. On September 19, 2017, the Docket Clerk emailed a copy of the Verdict Form to all counsel. In deference to the restricted nature of the Court's filing, FDIC-R has not attached the Verdict Form as an exhibit to this filing.

## II. LEGAL STANDARD

FDIC-R moves for judgment as a matter of law pursuant to Rule 50(b). The Seventh Circuit has recognized that the court may consider such a Rule 50(b) motion, even in the absence of a prior Rule 50(a) motion, "when the failure to review a sufficiency-of-the-evidence argument would result in 'manifest injustice.'" *SEC v. Yang*, 795 F.3d 674, 680 (7th Cir. 2015) (citing *Hudak v. Jepsen of Ill.,* 982 F.2d 250, 250-51 (7th Cir. 1992)). In such instances, the trial court's review "is limited to determining 'whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a manifest miscarriage of justice." *Id.* (emphasis in original).

In the alternative, FDIC-R moves this Court to alter or amend the jury's damages award pursuant to Federal Rule of Civil Procedure 59(e). "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F. 3d 542, 546 (7th Cir. 2006) (citing *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). Such motions may be filed prior to entry of judgment. *See, e.g.*, *Hilst v. Bowen*, 874 F.2d 725, 726 (10th Cir. 1989) (per curiam) (collecting cases and concluding "Rule 59(e) motion was timely even though it was made before the separate judgment was entered").

It is well-accepted that under Rule 59(e), a judgment may be properly amended or adjusted upward where, as here, "the jury has found the underlying liability and there is no genuine issue as to the correct amount of damages." *EEOC v. Massey Yardley Chrysler Plymouth, Inc*., 117 F.3d 1244, 1252-53 (11th Cir. 1997) ("*Massey*"). In *Massey*, the Eleventh Circuit agreed with the EEOC that because "the jury lacked any rational basis" for awarding less than the full amount of back pay to which the employee was entitled under federal law, the district court should have granted the EEOC's Rule 59(e) "motion to alter or amend judgment by

'conform[ing] the damages to the evidence'—*i.e.*, by *increasing* the $10,513.86 [jury award] to the sum needed to compensate [plaintiff] for back pay." *Id.* (emphasis added); *see also Liriano v. Hobart Corp.*, 170 F. 3d 264, 272-73 (2d Cir. 1999) (where jury neglected to include hospital bill in damages award, district court properly "adjusted the jury award to account for a discrete item that manifestly should have been part of the damage calculations and as to whose amount there was no dispute"). This Court's power to make such an adjustment is not affected by the amount of damages at issue. "[W]here there is no rational basis for the jury's verdict, . . . a trial court may impose the only damages award that reasonably can be drawn from the evidence." *Heller Fin., Inc. v. Grammco Computer Sale*s, 71 F.3d 518, 527 (5th Cir. 1996) (affirming district court's decision to increase the jury's award from $1 million to $4.7 million where record provided no evidence supporting a lesser award).

For the reasons discussed in Part III, *infra*, FDIC-R is entitled to a damages award in the amount of $3,790,695, regardless of whether Rule 50(b) or Rule 59(e) is applied. Depriving FDIC-R of the full damages to which it is entitled by law, in favor of a lesser jury award that has no evidentiary basis whatsoever, would constitute a "manifest injustice" under Rule 50(b) and a "manifest error of law or fact" under Rule 59(e). Accordingly, this Court should enter judgment in favor of FDIC-R with respect to damages in the principal amount of $3,790,695.

### III. ARGUMENT

#### A. The undisputed evidence shows that FDIC-R sustained $3,790,695 in losses.

Through its pre-trial rulings, as reflected in the pre-trial order, this Court provided a clear road map for the parties to follow at trial, and set the evidentiary parameters within which Chicago Title could challenge the FDIC-R's losses on the subject loans. *See Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) (identifying purpose of in limine motion to focus trial preparations and proceedings for a jury trial); *see also Lovejoy Elecs.*

5

*v. O'Berto*, 616 F. Supp. 1464, 1473 (N.D. Ill. 1985) (discussing purpose of partial summary judgment to "frame and narrow the triable issues") (quoting *Capitol Records, Inc. v. Progress Record Distrib.*, 106 F.R.D. 25, 29 (N.D. Ill. 1985)). FDIC-R met its burden of proving at trial the losses on the loans as reflected in the deficiency judgments, whereas Chicago Title failed to introduce any evidence whatsoever challenging the sufficiency of Founders Bank's credit bids or the amounts of the deficiency judgments. *See* Part II, *supra*. In fact, Chicago Title did not attack the amount of loss at all, but instead focused its proof on blaming others for the loss. As a result, the evidence introduced at trial supports only one damages number – *i.e.*, $3,790,695.

> **B.** **This Court's instructions to the jury were consistent with applicable law, and required the jury to award $3,790,695 once it found Chicago Title liable.**

At the close of evidence, this Court properly instructed the jury that it "must give full and separate consideration" to each of FDIC-R's claims and, if the jury found Chicago Title liable, "award the full amount of damages necessary to compensate for that particular claim." Jury Instructions (Dkt. 375) at 50. This is a correct statement of applicable federal and Illinois law, which require an award of full damages to compensate FDIC-R for its losses on the loans.

As an initial matter, Illinois law requires damages to be awarded in the amount that will make FDIC-R whole with respect to each of its claims – in this case, as limited by the Court's pre-trial rulings, $3,790,695. *See, e.g.*, *Best v. Taylor Mach. Works*, 689 N.E.2d 1057, 1076 (Ill. 1997) ("There is universal agreement that the compensatory goal of tort law requires that an injured plaintiff be made whole."); *Equity Ins. Managers of Ill. v. McNichols*, 755 N.E.2d 75, 80 (Ill. App. Ct. 2001) (stating rule for breach of contract claim); *In re Estate of Wernick*, 535 N.E.2d 876, 887-88 (Ill. 1989) (stating rule for breach of fiduciary duty claim).

In addition, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101–73, 103 Stat. 183, provides that:

6

> In any proceeding related to any claim against an insured depository institution's director, officer, employee, agent, attorney, accountant, appraiser, or any other party employed by or providing services to an insured depository institution, recoverable damages determined to result from the improvident or otherwise improper use or investment of any insured depository institution's assets ***shall include principal losses and appropriate interest***.

12 U.S.C. § 1821(*l*) (emphasis added) ("Section 1821(*l*)"). Section 1821(*l*) mandates an award of "principal losses and appropriate interest" to FDIC-R when two conditions are met: (1) the claims are against a "party employed by or providing services to an insured depository institution"; and (2) the damages arise "from the improvident or otherwise improper use or investment of any insured depository institution's assets." 12 U.S.C. § 1821(*l*). The jury's verdict in this case necessarily satisfies both conditions. First, in finding for FDIC-R and against Chicago Title as to liability, the jury necessarily found that Chicago Title provided escrow closing services to Founders Bank, an insured depository institution. *See, e.g.,* Verdict Form (Dkt. 376) at 2-5, 6, 8, 10, and 12. Chicago Title has never disputed this fact. Second, FDIC-R presented evidence at trial that Chicago Title caused Founders Bank's assets to be improperly used to fund fraudulent flip transactions. Ex. 2 (transcript excerpts), Trial Tr. Vol. 2B, Aug. 23, 2017 at 417:14-20; Vol. 7B, Aug. 30, 2017 at 1620:7-1621:10, 1661:20-25; and Vol. 8, Aug. 31, 2017 at 1704:3-22. In finding liability, the jury necessarily found that FDIC-R's damages arise from Chicago Title's misconduct. The jury also specifically found Chicago Title's misconduct to be willful and wanton (Verdict Form (Dkt. 376) at 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, and 29), which the jury instructions defined as "a course of action which shows actual or deliberate intention to harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." Jury Instructions (Dkt. 375) at 48. As demonstrated at trial, FDIC-R suffered $3,790,695 in principal losses as a result of Chicago Title's misconduct. *See, e.g.*, Ex. 1 (transcript excerpts), Trial Tr. Vol. 3B, Aug. 24, 2017 at 591:20-602:9.

This Court's instructions to the jury on damages are consonant with applicable federal and Illinois law, which provides that recoverable damages "shall" include principal losses and entitle FDIC-R to receive full compensation for its damages on the subject loans upon a finding of liability. Thus, the jury having found Chicago Title liable on each of FDIC-R's claims, the damages award must reflect "the full amount of damages necessary to compensate for that particular claim." Jury Instructions (Dkt. 375) at 50. And because the uncontroverted evidence at trial supports only one damages number – *i.e.*, $3,790,695 – there cannot be any basis (much less a reasonable basis) for a lesser award. Judgment in the amount of $3,790,695 should therefore be entered in favor of the FDIC-R, as required by applicable law.

**C.     The jury's findings with respect to liability support an award of $3,790,695.**

Rather than dispute the amount of loss, Chicago Title attempted to show its conduct was not a proximate cause of FDIC-R's loss – a position the jury rejected – and that Founders was contributorily negligent, which cannot, as a matter of law, decrease the damages here.

The jury in this case made specific findings that Chicago Title was a proximate cause of FDIC-R's losses, rejecting Chicago Title's arguments that its misconduct somehow did not cause FDIC-R's losses on the loans. *See* Verdict Form (Dkt. 376) at 6, 8, 10, 12, 14, 16, 18, and 20. Ample trial evidence supports these findings, including testimony from Founders' loan officer, David Spedale, that the bank would have "stopped the closing[s]" and "never made the loans" if Chicago Title had disclosed the improper flip transactions. *See* Ex. 1 (transcript excerpts), Trial Tr. Vol. 3B, Aug. 24, 2017 at 675:23-677:12. As a result, under well-settled Illinois law, Chicago Title is liable for the full amount of FDIC-R's losses on the subject loans. *See, e.g.*, *Ferrell v. Esparza*, 773 N.E.2d 650, 656-57 (Ill. App. Ct. 2001) ("[T]here may be more than one proximate cause of an injury, and a defendant may be held liable for its conduct whether it contributed in whole or in part to the plaintiff's injury, so long as that conduct was a proximate

8

cause of the injury." (citing *Nelson v. Union Wire Rope Corp.*, 199 N.E.2d 769, 780 (Ill. 1964))); *Lipke v. Celotex Corp.*, 505 N.E.2d 1213, 1221 (Ill. App. Ct. 1987) (when defendant's negligent conduct is a proximate cause of plaintiff's loss, "it is no defense that some other person or thing contributed to bringing about the result for which damages were claimed. Either or both parties are liable for all damages sustained" (quoting *Romine v. City of Watseka*, 91 N.E.2d 76 (Ill. App. Ct. 1950))); *see also* Illinois Pattern Jury Instructions, Civil, No. 12.04.

Likewise, the jury's finding that Founders Bank was partially responsible for causing the losses on the subject loans does not affect FDIC-R's right to an award of $3,790,695. *See, e.g.*, Verdict Form (Dkt. 376) at 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, and 29. Under Illinois law, comparative negligence is only available as an affirmative defense to *tort* claims. *See* 735 I.L.C.S. 5/2-1116. As a result, comparative negligence is not a valid defense to FDIC-R's breach of contract and breach of fiduciary duty claims. *See HSBC Mortg. Servs. v. Equisouth Mortg.*, Inc., No. 10 C 4747, 2011 WL 529412, at *3 (N.D. Ill. Feb. 7, 2011) ("under Illinois law, the doctrine of comparative fault does not apply to breach of contract claims" (citing *Klingler Farms, Inc. v. Effingham Equity, Inc.*, 525 N.E.2d 1172, 1176 (1988))); *Hollinger Int'l, Inc. v. Hollinger, Inc.*, No. 04-c-0698, 2006 WL 1444916, at *2 (N.D. Ill. Jan. 25, 2006) ("contribution may not be sought for a breach of fiduciary duty because, under Illinois law, the breach is not a tort" (citing *St. Paul Fire & Marine Ins. Co. v. Great Lakes Turnings, Ltd.,* 774 F. Supp. 485, 488 (N.D. Ill. 1991)).[4]

Furthermore, with respect to FDIC-R's negligence and negligent misrepresentation claims, because the jury found that Chicago Title's conduct was willful and wanton – on the basis of overwhelming evidence that Chicago Title intentionally facilitated the flip of the subject

---

4     All unpublished opinions are attached as Exhibit A.

properties to increase its own profits – the jury may not reduce FDIC-R's damages for reasons of comparative negligence. *See Burke v. 12 Rothschild's Liquor Mart, Inc.*, 593 N.E.2d 522, 532 (Ill. 1992) (stating rule and recognizing "qualitative difference between simple negligence and willful and wanton conduct"); *see also* Jury Instructions (Dkt. 375) at 47 ("If you find that Chicago Title's conduct was willful and wanton, Chicago Title is liable for the entire amount of losses occasioned by its misconduct and you are not to consider any possible fault of Founders Bank or any other person or entity with respect to those losses."). Accordingly, under Illinois law, the jury's findings on liability with respect to each cause of action mandate entry of a damage award in the amount of $3,790,695.

### D. FDIC-R is entitled to pre-judgment interest.

Section 1821(*l*) and Illinois law provide two independent bases for awarding pre-judgment interest to FDIC-R.

#### 1. The plain language of Section 1821(*l*) requires an award of appropriate interest to FDIC-R.

As discussed above, Section 1821(*l*) provides that FDIC-R's recoverable damages in a case such as this "shall include principal losses *and appropriate interest*." 12 U.S.C. § 1821(*l*) (emphasis added). Courts interpreting Section 1821(*l*) have consistently found that "appropriate interest" includes pre-judgment interest. *See, e.g.*, *FDIC v. Mijalis*, 15 F.3d 1314, 1325-26 (5th Cir. 1994); *FDIC v. Moll*, 848 F. Supp. 145, 148 (D. Colo. 1993); *FDIC as Receiver for IndyMac Bank v. Van Dellen*, No. 2:10-cv-04915, *slip op.* at 1 (C.D. Cal. Mar. 5, 2013).

Because the plain language of Section 1821(*l*) requires that FDIC-R's "recoverable damages . . . *shall include* principal losses and appropriate interest," an award of appropriate pre-judgment interest under Section 1821(*l*) is required. *See generally United States v. Monsanto*, 491 U.S. 600, 607 (1989) (concluding that in using the word "shall," "Congress could not have

10

chosen stronger words to express its intent that forfeiture be mandatory"); *Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983) (discussing "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed").[5]

As the Seventh Circuit has recognized, "[p]rejudgment interest is an element of complete compensation. Money today is not a full substitute for the same sum that should have been paid years ago." *In re Oil Spill by The Amoco Cadiz*, 954 F.2d 1279, 1331 (7th Cir. 1992) ("*Amoco Cadiz*") (internal citations omitted); *see also Premium Plus Partners v. Goldman, Sachs & Co.*, 648 F.3d 533, 539 (7th Cir. 2011).

In this case, FDIC-R has lost the time value of money on its damages for 10 years. Ex. 1 (testimony excerpts), Trial Tr. Vol 3B, Aug. 24, 2017 at 589:6-591:4. An award of pre-judgment interest is therefore necessary to put FDIC-R in the same position that it would have been in but for Chicago Title's misconduct. This result is especially warranted in light of the jury's finding that Chicago Title's misconduct was willful and wanton. *See Gorenstein*, 874 F.2d at 436 ("The award of prejudgment interest is particularly appropriate in a case such as this where the violation was intentional, and indeed outrageous."). There can be no reasonable dispute that interest is both appropriate and mandated under Section 1821(*l*) in this case.

Under federal law, pre-judgment interest in this case totals $1,643,187.60 as of May 15, 2018. In the Seventh Circuit, "prejudgment interest typically accrues from the date of the loss or from the date on which the claim accrued." *Am. Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras*

---

[5] Under Seventh Circuit precedent, pre-judgment interest is "presumptively available" for matters based on violations of federal law. *See Gorenstein Enter., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989) (Posner, J.). While FDIC-R's claims were not based on violations of federal law, they do arise under the laws of the United States. 12 U.S.C. § 1819(b)(2)(A) ("all suits of a civil nature at common law or in equity to which the [FDIC-R] is a party shall be deemed to arise under the laws of the United States"). Accordingly, the principles governing awards of pre-judgment interest in matters based on violations of federal law are equally applicable here, especially since Congress has mandated that appropriate interest be awarded here.

*Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003)); *see also Amoco Cadiz*, 954 F.2d at 1331 ("[O]nce there is a judgment the obligation is dated as of the time of the injury."). The date of loss in this case occurred, at the very latest, when the foreclosure sales for the subject properties were completed and the deficiency judgments were entered. From that moment forward, Founders Bank was deprived of the time value of money on the $3,790,695 in losses that it sustained on the subject loans. Pre-judgment interest accordingly should be calculated from the date of the foreclosure sales for each of the subject loans, as evidenced at trial. *See, e.g.*, Ex. 1 (transcript excerpts), Trial Tr. Vol. 3B, Aug. 24, 2017, 589:6-591:4.

The Seventh Circuit requires pre-judgment interest to be calculated using the "market rate" of interest. *See, e.g.*, *Amoco Cadiz*, 954 F.2d at 1331 ("Prejudgment interest at the market rate puts both parties in the position they would have occupied had compensation been paid promptly."). At a minimum, this requires the Court to use the average prime rate of interest over the relevant time period, which is 3.59% for the LaSalle Loan, 3.51% for the Bissell Loan, and 3.48% for the two Campbell Loans (as of May 15, 2018).[6] *See First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 480 & n.9 (7th Cir. 1999) (citations omitted) ("In *Amoco Cadiz*, we held that the average prime rate for the entire time period was the appropriate measure, rather than the current prime rate.").[7] The calculation of pre-judgment interest also

---

[6] As of May 15, 2018, the U.S. prime rate is 4.75%. Current and historical data concerning the U.S. prime rate is available at https://fred.stlouisfed.org/series/PRIME.

[7] An alternative method of calculating pre-judgment interest, known as "refined rate setting," looks to the market interest rate that the defendant paid to borrow money during this period, based on its publicly traded debt instruments. *See Amoco-Cadiz*, 954 F.2d at 1332. Although Chicago Title did not issue publicly traded debt during the applicable time period, Chicago Title's ultimate parent, Fidelity National Financial, Inc. ("Fidelity"), conducted three such offerings with interest rates ranging between 4.25% and 6.60% (which is 74 to 309 basis points above the average prime rate of 3.51% on the Bissell Loan during the applicable time period). *See* Ex. 3 (Fidelity Form 10-K as of 12/31/2013), at 80-85 (Note J).

12

must be compounded over time. *See Gorenstein*, 874 F.2d at 437. Calculating pre-judgment interest in accordance with Seventh Circuit precedent results in a pre-judgment interest award of $1,643,187.60 as of May 15, 2018.[8] *See* Ex. 4.

### 2. FDIC-R is independently entitled to pre-judgment interest under Illinois law.

Even if Illinois law controlled the disposition of this request (which it does not), FDIC-R would be independently entitled to pre-judgment interest on its breach of fiduciary duty claim.

Breach of fiduciary duty is an equitable claim in Illinois. *See, e.g.*, *Martin v. Heinold Commodities, Inc.*, 608 N.E. 2d 449, 452-53 (Ill. App. Ct. 1992). As a result, this Court has the equitable power to award pre-judgment interest for this claim. *See Wernick*, 535 N.E.2d at 887-88 (recognizing "current trend" in equitable proceedings "is to allow an award of interest on funds owing") (citations omitted); *Angelopoulos v. Keystone Orthopedic Specialists, SC*, No. 12-cv-5836, 2018 WL 461227, *4 (N.D. Ill. Jan. 18, 2018) (citing *Wernick* and concluding "equity and common sense support the propositions that the time value of money is significant and to forego prejudgment interest in circumstances like this would reward a wrongdoer and, at a minimum, provide a strong incentive for a defendant to seek delay in the resolution of a civil action").

As discussed above, the equities in this case weigh strongly in favor of an award of equitable pre-judgment interest: FDIC-R has lost the time value of money on the losses on the subject loans, and the jury made a specific finding that Chicago Title's willful and wanton misconduct caused those losses. Illinois courts have awarded equitable pre-judgment interest

---

[8] Once this Court decides the instant motion, FDIC-R will provide an updated calculation of its pre-judgment interest to incorporate the interest rate or any other parameters set forth in the order and to account for the additional interest that will accrue during the pendency of the motion.

13

when presented with similar facts. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. DiMucci*, 34 N.E.3d 1023, 1048 (Ill. App. Ct. 2015) (affirming pre-judgment interest award both to compensate plaintiff for the lost time value of money and in light of defendant's "bad conduct," and noting that "under Illinois Supreme Court precedent bad conduct is not a precise requirement"). Accordingly, if Illinois law is applied, this Court should use its equitable powers under Illinois law to award pre-judgment interest on FDIC-R's breach of fiduciary duty claim.

Applying Illinois law, pre-judgment interest in this case totals $1,364,903.54 as of May 15, 2018. When calculating pre-judgment interest, a trial court applying Illinois law may award either the prime rate or the 5% statutory rate under the Illinois Interest Act (815 ILCS 205/2). *See Wernick*, 535 N.E.2d at 887. Under Illinois law, pre-judgment interest is not ordinarily compounded over time. *See Angelopolous*, 2018 WL 461227, at *4. Because its overriding purpose is to "make the [FDIC-R] complete," an award of equitable pre-judgment interest is properly calculated from the dates of the foreclosure sales in order to compensate FDIC-R for the time value of money. *See Wernick*, 535 N.E.2d at 887; *but see Angelopolous*, 2018 WL 461227, at *5 (calculating equitable pre-judgment interest from date of plaintiff's demand letter, because plaintiff waited years before making demand or filing suit). Equitable considerations in this case require pre-judgment interest to be calculated from the dates of the foreclosure sales. The evidence introduced at trial shows that Founders Bank did not sit on its hands with respect to its claims against Chicago Title. Indeed, it did not even discover that the subject loans may have been fraudulent until December 2008, when Founders Bank Vice President Garry Corrie had a chance encounter with Ned Dikmen, a prior owner of one of the subject properties, and learned that Dikmen had sold the property for less than the amount of Founders Bank's loan. *See* Ex. 1 (testimony excerpts), Trial Tr. Vol. 3B, Aug. 24, 2017 at 602:10-604:18. Upon discovering this,

Founders launched an investigation (*id.*) and promptly sent a demand letter to Chicago Title in early 2009. Ex. 5 (testimony excerpts), Trial Tr. Vol. 1B, Aug. 22, 2017 at 204:23-205:4. Founders Bank was therefore diligent in pursuing its claims, and calculating pre-judgment interest using any time other than the dates of the foreclosure sales would serve only to reward Chicago Title for its misconduct.

Calculating pre-judgment interest in accordance with Illinois law results in a pre-judgment interest award of $1,364,903.54 as of May 15, 2018. *See* Ex. 4.

### IV. CONCLUSION

For the foregoing reasons, FDIC-R respectfully requests entry of judgment in favor of FDIC-R on the jury's verdict, with two adjustments that are required as a matter of law: (1) an adjustment of the jury's total damages award on each of FDIC-R's claims from $1,450,000 to $3,790,695; and (2) an award of pre-judgment interest on FDIC-R's damages.

Respectfully submitted,

Date: May 22, 2018

By: /s/ Richard J. Landau
**RJ LANDAU PARTNERS PLLC**
Richard J. Landau
Christopher A. Merritt
*Attorneys for Plaintiff*
5340 Plymouth Rd., Suite 200
Ann Arbor, MI 48105
(734) 865-1585

*And*

**MORTGAGE RECOVERY LAW GROUP LLP**
Paul A. Levin (*Admitted Pro Hac Vice*)
700 N. Brand Blvd., Suite 830
Glendale, CA 91203
(818) 630-7900