**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Founders Bank, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 12-cv-05198 |
| v. | ) ) | Judge Andrea R. Wood |
| CHICAGO TITLE INSURANCE COMPANY, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Federal Deposit Insurance Corporation ("FDIC"), acting as Receiver for Founders Bank, sued Defendants Chicago Title Insurance Company and Chicago Title and Trust Company (together, "Chicago Title") for breach of contract, breach of fiduciary duty, negligence, and negligent misrepresentation based on Chicago Title's actions as escrow agent for four fraudulent real estate transactions funded by Founders Bank. The case went to trial, at the conclusion of which the jury found Chicago Title liable on all four counts and awarded damages totaling $1,450,000. The parties now bring a series of post-trial motions. Chicago Title asks the Court for judgment as a matter of law, for a new trial, or to alter the judgment (Dkt. No. 398), and also seeks a setoff from the jury's damages award to account for $500,000 paid by a former co-defendant to settle the claims against it (Dkt. No. 391). The FDIC moves for judgment as a matter of law or to alter the judgment as to the jury's damages award. (Dkt. No. 387.) For the reasons that follow, the Court grants Chicago Title's request for a new trial limited to one particular damages issue, as well as its motion for a setoff. It denies the FDIC's motion for judgment as a matter of law or to alter the judgment.

## BACKGROUND

### I.      The FDIC's Allegations Against Chicago Title

The FDIC's claims against Chicago Title arise out of Chicago Title's role as escrow agent for four allegedly fraudulent "flip" real estate transactions. Founders Bank was the lender for the transactions. With respect to each transaction, the FDIC alleged that a different limited liability corporation purchased the subject property by making a down payment of at least twenty percent of the property's purchase price and funding the remainder of the purchase price with a loan from Founders Bank. The funds from each purchaser and Founders Bank were deposited with Chicago Title, which then disbursed the funds according to Founders Bank's escrow trust instructions. While Chicago Title disbursed funds approximately equivalent to Founders Bank's deposits into a separate escrow trust that was used to close on the property with the seller, it also disbursed an amount roughly corresponding to the purchaser's down payment to an entity closely related to the purchaser.

On the same day each transaction closed, Chicago Title also closed a separate, second transaction for the same property in which the property owner sold the property for a lower price to the entity that was the seller in the transaction funded by Founders Bank. Founders Bank was unaware of these lower-priced transactions and Chicago Title did not report them to Founders Bank. Moreover, despite the two sales, Chicago Title recorded only one deed for the conveyance from the seller to the purchaser in the higher-priced transaction. The overall purpose of fabricating the higher-priced sales was to increase the amounts that Founders Bank was willing to lend to purchase the properties, thereby allowing the purchasers to avoid paying a down payment and obtain the properties using solely the funds loaned by Founders Bank. Aiding this scheme was Jo Jo Real Estate Enterprises, LLC, doing business as Property Valuation Services ("PVS"), which

prepared appraisals for each property with artificially-inflated values. Founders Bank relied on the appraisals in determining the amounts it would loan for the transactions.

Due to its role in the scheme, the FDIC brought claims against Chicago Title for breach of contract, breach of fiduciary duty, negligence, and negligent misrepresentation. In addition, the FDIC asserted breach of contract and negligent misrepresentation claims against PVS.

## II. Chicago Title's Motion for Partial Summary Judgment

Prior to trial, Chicago Title moved for partial summary judgment on the issue of damages as to three of the four properties at issue in the action. As established by the summary judgment record, after the transactions closed, each purchaser defaulted on its loan and Founders Bank instituted legal actions in Illinois state court seeking foreclosure. The state court awarded Founders Bank judgments of foreclosure and sale, which provided that the properties were to be sold at a public sale. Before proceeding with the judicial sale of the properties, Founders Bank once again retained PVS to perform an appraisal for each of the four properties. Founders Bank relied on those second appraisals in placing successful credit bids for the four properties at the public auction. The state court approved the sale of each property. It also awarded deficiency judgments against the final purchasers in the flip transactions, in amounts that represented the rough differences between Founders Bank's credit bids and the debts owed on the underlying loans. Following its purchase of the four properties, Founders Bank learned of the double-closings. Further investigation revealed that PVS's first set of appraisals provided values significantly greater than the purchase prices at the lower-priced closings. Ultimately, Founders Bank sold all four properties at a loss.

In its motion for partial summary judgment, Chicago Title argued that Founders Bank's potential recovery at trial should be limited to the sum of the deficiency judgments. For its part,

the FDIC claimed damages equal to Founders Bank's total aggregate loss on the four properties, which consisted of the sum of the deficiency judgments, losses from Founders Bank's sale of the properties, and construction costs for two of the properties. This Court granted Chicago Title's motion for partial summary judgment, holding that any recovery at trial by the FDIC would be limited to the amounts of the deficiency judgments—*i.e.*, an aggregate amount of $3,790,695.[1] Shortly thereafter, PVS settled with the FDIC and was dismissed from the action.

### III.    The Trial and Verdict

Following a nearly three-week trial, a jury found Chicago Title liable on all four counts against it.[2] The jury awarded the FDIC damages of $1,450,000. The jury delivered its verdict on a 28-page special verdict form. For each of the four causes of action, the form asked the jury to answer a series of interrogatories addressed to each of the four subject properties. Thus, on the breach of contract claim, the jury was asked with respect to each property whether the FDIC proved that Chicago Title committed a breach of contract as to that property. If the jury answered "no," then its deliberations were over. However, if it answered "yes," the form instructed the jury to go on to decide whether the FDIC proved Founders Bank sustained damages as a result of the breach. And if the answer to that question was "yes," the jury was asked to determine the amount of damages the FDIC proved. The form then had the jury answer the same interrogatories as to the next property. After rendering a verdict as to each of the four properties, the form directed the jury

---

[1] The original sum of the deficiency judgments was $3,880,696.91. However, the FDIC agreed voluntarily to reduce that figure by $90,000 because Founders was able to sell one of the properties for approximately $90,000 more than its credit bid.

[2] Chicago Title has asserted third-party claims against Douglas Shreffler, the attorney who represented the borrowers for purposes of the transactions. Chicago Title's claims against Shreffler were originally tried along with the FDIC's claims against Chicago Title. However, Shreffler, who was proceeding *pro se*, had a medical emergency during the trial resulting in his hospitalization. As a result, the Court declared a mistrial as to Chicago Title's third-party claims against Shreffler. Those claims have yet to be re-tried.

to continue on to the next cause of action, once again posing interrogatories for each of the four properties.

For the breach of fiduciary duty and tort claims, where the jury found that the FDIC had proved its claim and damages, the verdict form asked additional questions concerning Founders Bank's contributory negligence. Specifically, the form asked the jury if Chicago Title had proved that Founders Bank failed to use reasonable care for its own safety or the safety of its property. If the answer was "yes," the jury was asked if Founders Bank's failure was a proximate cause of the damages proved for the claim as to that property. Then, if the answer to that question was "yes" as well, the form asked the jury to determine whether Chicago Title proved Founders Bank's contributory negligence was more than half the total proximate cause of the damages for that property on that claim. Finally, if all preceding questions were answered in the affirmative, the form asked the jury to assign a percentage by which the damages should be reduced on account of Founders Bank's contributory negligence and to determine whether Chicago Title's conduct causing the damages was willful and wanton.

The jury ultimately found Chicago Title liable as to all four properties on all four causes of action. As to each of the four properties, the jury found the same amount of damages across the four causes of action. In other words, the damages proved as to one property on the breach of contract claim was identical to the damages proved with respect to that same property on the breach of fiduciary duty and tort claims. That was so even though for the breach of fiduciary duty and tort claims, the jury found that the damages should be reduced by 50% for all four properties due to Founders Bank's contributory negligence—as the reduction for contributory negligence was effectively negated by the jury's finding that Chicago Title's conduct was willful and wanton.

**DISCUSSION**

## I. Chicago Title's Motion for a New Trial, Amended Judgment, or Judgment as a Matter of Law

Pursuant to Federal Rules of Civil Procedure 50(b), 59(a), and 59(e), Chicago Title seeks to reverse or vacate the portion of the jury's verdict finding that Chicago Title's conduct was willful and wanton. Under Rule 50(a), a party that "has been fully heard on an issue during a jury trial" may challenge the sufficiency of the evidence on that issue by moving for judgment as a matter of law "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a). If the Rule 50(a) motion is denied, a party may renew the motion after the jury's verdict pursuant to Rule 50(b). Fed. R. Civ. P. 50(b). In deciding a Rule 50 motion, the Court "construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence." *Passananti v. Cook Cty.*, 689 F.3d 655, 659 (7th Cir. 2012).

Following a jury trial, a party may move for a new trial under Rule 59(a) only "if the jury's verdict is against the manifest weight of the evidence, or if for other reasons the trial was not fair to the moving party." *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) (internal quotation marks and alteration omitted). A motion to alter or amend a judgment under Rule 59(e) allows a party to "bring to the district court's attention a manifest error of law or fact, or newly discovered evidence." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). Such a motion "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Id.* Instead, a Rule 59(e) motion simply "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). For relief to be

appropriate, the motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *LB Credit Corp. v. Resolution Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995).

The Court begins by addressing Chicago Title's Rule 50(b) motion for judgment as a matter of law. Chicago Title never made a Rule 50(a) motion with respect to the willful and wanton conduct issue. Generally, courts decline to consider Rule 50(b) motions "unless the party seeking review has made a timely motion for a directed verdict" under Rule 50(a). *SEC v. Yang*, 795 F.3d 674, 680 (7th Cir. 2015) (internal quotation marks omitted). Nevertheless, the Seventh Circuit recognizes a limited "exception to this rule of forbearance when the failure to review a sufficiency-of-the-evidence argument would result in 'manifest injustice.'" *Id.*

Here, the Court declines to consider Chicago Title's arguments regarding the jury's finding of willful and wanton conduct to the extent Chicago Title raises makes them pursuant to Rule 50. Any arguments related to the sufficiency of the evidence as to Chicago Title's willful and wanton conduct were available to Chicago Title well before the matter was submitted to the jury. The FDIC proposed jury instructions on willful and wanton conduct in the final pre-trial order, and Chicago Title could have raised the argument in a proper Rule 50(a) motion at trial. Moreover, Chicago Title's motion fails to address why a manifest injustice would result from this Court declining to consider the Rule 50(b) motion at this point. Thus, the Court finds no basis for granting Rule 50(b) relief and will consider Chicago Title's motion only under the rubric of Rule 59.

Chicago Title first argues that the FDIC's failure to plead willful and wanton conduct in the second amended complaint precluded it from requesting a jury instruction on the issue at trial. But the FDIC requested a willful and wanton conduct instruction in response to Chicago Title's

contributory negligence affirmative defense. In Illinois, contributory negligence is an affirmative defense that operates to reduce a tort plaintiff's recovery where the plaintiff's own negligence is a contributing proximate cause of his or her injury.[3] *See Krklus v. Stanley*, 833 N.E.2d 952, 960 (Ill. App. Ct. 2005). The defense provides that where the plaintiff's own negligence constitutes more than half the proximate cause of his or her injury, the plaintiff is precluded from recovering any damages. *Aimonette v. Hartmann*, 574 N.E.2d 776, 779 (Ill. App. Ct. 1991). Yet where the defendant's conduct is found to be intentionally willful and wanton, there can be no reduction on account of the plaintiff's contributory negligence. *Poole v. City of Rolling Meadows*, 656 N.E.2d 768, 771 (Ill. 1995). While the FDIC did not plead that Chicago Title's conduct was willful and wanton in the second amended complaint, it was Chicago Title that put its willful and wanton conduct at issue by asserting Founders Bank's contributory negligence as an affirmative defense. Once Chicago Title asserted contributory negligence as an affirmative defense, it opened the door for the FDIC to claim that Chicago Title's acts were willful and wanton.

Now Chicago Title claims that the FDIC should have known that Chicago Title would raise a contributory negligence defense and therefore was required to anticipatorily plead in its second amended complaint that Chicago Title's conduct was willful and wanton. But a complaint generally does not have to anticipate an affirmative defense. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). The exception to this general rule applies where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Id.* All the cases

---

[3] Where a plaintiff's damages are reduced proportionately to his or her own fault, the defense is referred to as comparative negligence. *Alvis v. Ribar*, 421 N.E.2d 886, 892 (Ill. 1981). On the other hand, contributory negligence refers to the rule where any fault on the part of the plaintiff is a complete bar to recovery. *Id.* at 893. Illinois applies a modified comparative negligence regime whereby a plaintiff cannot recover if he or she is more than fifty percent responsible for the injury. *Aimonette v. Hartmann*, 574 N.E.2d 776, 779 (Ill. App. Ct. 1991). Because the disputed jury instruction and the parties' briefs use the term contributory negligence to refer to Illinois's version of the defense, the Court adheres to that convention in this opinion.

cited by Chicago Title to support its claim that the FDIC had to anticipatorily plead willful and wanton conduct fall under this exception. That is because the defendants in those cases raised immunity as an affirmative defense. *E.g.*, *Rivers v. City of Bloomington*, No. 14-cv-1146, 2014 WL 12734744 (C.D. Ill. July 17, 2014); *Conway v. Cook County*, No. 98 C 5324, 1999 WL 14497 (N.D. Ill. Jan. 8, 1999). The particular immunity at issue was established by the Illinois Local Governmental and Governmental Employees Tort Immunity Act, which makes a municipal employee immune from liability for acts taken "in execution or enforcement of any law ***unless such act or omission constitutes willful and wanton conduct***." 745 ILCS 10/2-202 (emphasis added). Thus, this statutory immunity defeats any tort claim against an Illinois municipal employee unless the employee's conduct was willful and wanton. In such cases, where there are no allegations of willful and wanton conduct, it is clear from the face of the complaint that the immunity applies and the claim lacks merit because there can be no liability whatsoever. By contrast, there is no need to anticipate a contributory negligence defense, as in Illinois, contributory negligence does not necessarily defeat recovery but may simply reduce the maximum recovery. Moreover, contributory negligence is usually an issue for a jury that cannot be resolved as a matter of law. *Savage v. Martin*, 628 N.E.2d 606, 612 (Ill. App. Ct. 1993).

Chicago Title thus has failed to convince this Court that it was improper to instruct the jury on willful and wanton conduct. The Court next turns to Chicago Title's argument that the particular willful and wanton conduct jury instruction given was improper. As an initial matter, the Court notes that Chicago Title did not properly object to the proposed instruction at trial. Federal Rule of Civil Procedure 51 requires a party to object to a proposed jury instruction on the record before the instruction is delivered to the jury by "stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c). Chicago Title claims it did timely object,

pointing to a portion of the trial transcript where its counsel indicates his disagreement with the proposed willful and wanton instruction. (Pl.'s Resp. to Defs.' Mot. for New Trial, Am. J., or J. as a Matter of Law, Ex. A at 3396–99, Dkt. No. 432-1.) But the disagreement was based on Chicago Title's contention, addressed above, that the FDIC did not plead willful and wanton conduct in the second amended complaint and therefore the issue should not be submitted to the jury. Chicago Title did not make a formal objection on the basis that the willful and wanton jury instruction misstated the law. *See Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 730 (7th Cir. 2002) ("[T]o preserve the objection, the party must state the same grounds when objecting to the jury instruction as it does in its motion for a new trial or on appeal."). Moreover, Chicago Title went on to participate in rewording the instruction to what was eventually provided to the jury.

Because Chicago Title did not timely object to the jury instruction, the Court reviews it now only for plain error. Fed. R. Civ. P. 51(d); *Lewis v. City of Chi. Police Dep't*, 590 F.3d 427, 433 (7th Cir. 2009) ("When a party fails to object to an instruction, the court will reverse only if there was a plain error affecting substantial rights." (internal quotation marks omitted)). Plain error review allows a court to reverse an unpreserved error only where: (1) there is an error; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017). In civil cases, "plain-error review of jury instructions is quite limited and discretionary, and reserved for exceptional circumstances." *Id.* (internal quotation marks and citation omitted); *see also Lewis*, 590 F.3d at 433 ("Plain error review of jury instructions is particularly-light-handed." (internal quotation marks omitted)).

Here, Chicago Title contends that the jury instruction defining willful and wanton conduct misstated Illinois law. The challenged instruction read:

> If you find that Chicago Title's conduct was willful and wanton, Chicago Title is liable for the entire amount of losses occasioned by its misconduct and you are not to consider any possible fault of Founders Bank or any other person or entity with respect to those losses.
>
> When I use the expression "willful and wanton conduct" I mean a course of action which shows actual or deliberate intention to harm or which, if not intentional, **_shows an utter indifference to or conscious disregard for the safety of others_**.

(Jury Instructions at 48 (emphasis added), Dkt. No. 375). That instruction does, in fact, contain an error. Specifically, the instruction defines willful and wanton conduct to include "an utter indifference to or conscious disregard for the safety of others," which is the accepted definition of reckless willful and wanton conduct in Illinois. *Kirwan v. Lincolnshire-Riverwoods Fire Prot. Dist.*, 811 N.E.2d 1259, 1263 (Ill. App. Ct. 2004) ("[B]oth the legislature and the [Illinois] supreme court have defined reckless willful and wanton conduct as conduct committed with utter indifference to or conscious disregard for the safety of others" (internal quotation marks omitted).)

According to the instruction given, a finding by the jury that Chicago Title's conduct was *either* intentionally *or* recklessly willful and wanton would have the effect of precluding any reduction on account of Founders Bank's contributory negligence. However, the Illinois Supreme Court held in *Poole v. City of Rolling Meadows* that only a defendant's intentional willful and wanton conduct precludes the reduction of damages due to a plaintiff's contributory negligence. *Poole*, 656 N.E.2d at 771. As explained in *Poole*, "if a defendant's conduct amounted to reckless willful and wanton behavior, plaintiff's damages could be reduced by the percentage of his contributory negligence." *Id.* The instruction given to Chicago Title's jury therefore contained an error. And because the instruction was contrary to existing authority from the Illinois Supreme Court, the Court finds the error to have been plain.

Based on the instruction, the verdict form for the breach of fiduciary duty claim[4] and both tort claims asked the jury—where it found Chicago Title liable on the underlying claim as to each property—questions related to Founders Bank's contributory negligence. Then, if the jury found that Founders Bank's contributory negligence required reduction of the FDIC's damages, the form asked whether "the FDIC-R prove[d] that the conduct by Chicago Title that caused Founders Bank's damages for [the] claim was willful and wanton?" (Jury Verdict, Dkt. No. 376.) The jury either checked "YES" or "NO." Nowhere was the jury asked whether Chicago Title's willful and wanton conduct was intentional or reckless. On each of the three claims and with respect to each of the four properties, the jury found Chicago Title liable but also that Founders Bank was contributorily negligent and its damages should be reduced by 50%. For each, the jury went on to conclude that Chicago Title's conduct was willful and wanton, effectively cancelling out its contributory negligence findings. Yet, because the jury was instructed that willful and wanton conduct included both intentional and reckless conduct, its verdict provides an insufficient basis for negating the contributory negligence reduction. Had reckless willful and wanton conduct not been included within the definition of willful and wanton conduct, the jury may well have concluded that Chicago Title's conduct did not suffice. Because Chicago Title was found liable for the full damages award on the breach of fiduciary duty and tort counts when the jury might have found it liable for only half that amount if properly instructed, Chicago Title's substantial rights were affected by the error.

---

[4]While the jury was instructed to make findings regarding contributory negligence as to the breach of fiduciary duty claim, it appears that instruction may have been in error. In Illinois, breach of fiduciary duty is not generally considered a tort. *Kinzer v. City of Chi*, 539 N.E.2d 1216, 1220 (Ill. 1989) ("This court has . . . regarded breach of fiduciary duty as controlled by the substantive laws of agency, contract and equity." (citations omitted)). The Court has found no case law demonstrating that the tort defense of contributory negligence applies to a breach of fiduciary duty claim. Nonetheless, while the issue is referred to in passing by the parties, neither party requests relief on that basis. Therefore, any right to relief on this basis has been waived.

The Court finds that allowing the full damages award to stand notwithstanding the faulty willful and wanton instruction would seriously affect the fairness, integrity, and public reputation of judicial proceedings. The FDIC insists there is no unfairness because the jury also found Chicago Title liable for the full $1,450,000 on the breach of contract claim, and principles of contributory negligence do not apply to contract claims. But even though the error might not make a difference to the total amount of damages Chicago Title ultimately must pay, the Court finds it necessary to correct the error. For instance, if Chicago Title were to appeal successfully the jury's verdict on the breach of contract claim, its liability would be predicated solely on the breach of fiduciary duty and tort claims. And the jury's finding of willful and wanton conduct may potentially have collateral consequences in future litigation.

Having found plain error in the jury instruction, the question becomes whether this Court should grant a new trial or simply amend the judgment. Chicago Title contends that the judgment should be amended to excise the jury's willful and wanton finding, thus reducing the damages awards for the effected claims by half based on the jury's 50% contributory negligence finding. Specifically, Chicago Title argues that the evidence at trial was insufficient to prove that it acted with deliberate intent to harm Founders Bank. The FDIC, on the other hand, insists that there was overwhelming evidence at trial that Chicago Title's conduct was intentionally willful and wanton. The Court need not parse the parties' evidentiary contentions, as it finds that there was sufficient evidence for a jury to make a finding that Chicago Title acted intentionally willfully and wantonly.

Based on the evidence adduced at trial, the jury could reasonably have concluded that Chicago Title knowingly breached Founders Bank's closing instructions by making false statements and failing to disclose certain facts, which, if disclosed, would have led Founders Bank

not to close the deal. In addition, the FDIC's expert witness testified that the four subject loans were clearly not legitimate transactions. And internal Chicago Title documents were introduced showing that Chicago Title was aware of the dangers posed by flip transactions; nonetheless, Chicago Title frequently closed flip transactions, rarely informed the final purchaser's lender that a same-day flip was taking place, and took no steps to train its closers on identifying illegitimate flip transactions. That said, the evidence was not so overwhelming that the Court can conclude that the jury *must* have found Chicago Title acted intentionally willfully and wantonly. Indeed, Chicago Title points to evidence and testimony challenging each of the FDIC's contentions regarding Chicago Title's deliberate intention to harm. For example, it points to evidence tending to show that the entries on Chicago Title's disbursement statements were accurate. It also notes that the jury heard that same-day flip transactions, even with significant price differentials, could be legitimate. Given the competing evidence bearing on the willful and wanton nature of Chicago Title's conduct, this Court cannot discern which degree of intent the jury found or even be certain that the jurors all agreed on whether it was intentional or reckless conduct.

In short, the jury heard sufficient evidence from which it could reasonably have concluded that Chicago Title's conduct was intentionally willful and wanton. But it could also have reasonably concluded that Chicago Title's actions were merely recklessly willful and wanton. For that reason, the Court declines to amend the judgment to vacate the jury's willful and wanton finding. Instead, the appropriate remedy for the erroneous jury instruction is to order a new trial limited to the damages issue of whether Chicago Title's conduct comprising the affected counts

was intentionally willful and wanton. Therefore, Chicago Title's motion for a new trial is granted.[5]

## II.    The FDIC's Motion for Judgment as a Matter of Law or Amended Judgment

Because the Court's decision to grant a new trial does not affect the jury's breach of contract damages verdict at all or the finding of liability or calculation of the initial amount damages that the FDIC proved for each transaction for the breach of fiduciary duty and tort claims, the Court will proceed to address the FDIC's motion for judgment as a matter of law pursuant to Rule 50(b) or for an amended judgment pursuant to Rule 59(e). The FDIC's motion requests that the Court vacate the jury's $1,450,000 damages award and instead enter judgment in the amount of $3,790,695. It further seeks an award of pre-judgment interest.

### A.    Modification of Damages Award

According to the FDIC, by finding Chicago Title liable on each of the four causes of action, the jury was compelled to award damages equal to the sum of the deficiency judgments for the four properties, or $3,790,695. For two of the subject properties, 5408-5410 North Campbell and 5412-5414 North Campbell, the jury did award damages roughly equivalent to the amount of their respective deficiency judgments. For the other two properties, 2218-2224 North Bissell ("North Bissell") and 851 North LaSalle ("North LaSalle"), however, the damages award was just a fraction of the properties' respective deficiency judgments. The FDIC contends that those lower damages amounts were not supported by any evidence at trial and requests that the Court either rule as a matter of law or amend the judgment to award it $3,790,695, which it claims is the only damages number supported by the evidence.

---

[5] Chicago Title has a pending motion to review the FDIC's bill of costs. (Dkt. No. 426.) That motion is denied as moot in light of the Court's ruling that Chicago Title is entitled to a new trial on the breach of fiduciary duty and tort claims.

At trial, the jury heard testimony as to the amount of the deficiency judgment for each of the four properties. The FDIC contends that this was the only evidence presented to the jury concerning the proper amount of damages. But while the FDIC asserts that Chicago Title introduced no evidence challenging the accuracy of the credit bids giving rise to the deficiency judgments, Chicago Title did introduce evidence that certain losses were caused by superseding events occurring after Chicago Title entered into the escrow agreements. For example, with respect to the North Bissell and North LaSalle properties (for which the damages verdict was well below the amount of their deficiency judgments), Chicago Title adduced evidence that construction undertaken during the period between the flip transactions and foreclosures impaired the buildings' condition. In addition, Chicago Title's damages expert testified that the Chicago condominium market collapsed during the relevant period between the sales and foreclosures.

In Illinois, the "proper measure of damages for a breach of contract is the amount of money necessary to place the plaintiff in a position as if the contract had been performed." *In re Ill. Bell Tel. Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013). Only those damages that "naturally and generally result from a breach are recoverable." *Id.* And "damages not the proximate result of the breach will not be allowed." *Feldstein v. Guinan*, 499 N.E.2d 535, 537 (Ill. App. Ct. 1986). Similarly, for the breach of fiduciary duty and tort claims, Chicago Title's acts or omissions must have been the proximate cause of Founders Bank's damages. This means that Founders Bank's damages "must be the natural and probable result of the defendant's breach of duty." *Stojkovich v. Monadnock Bldg.*, 666 N.E.2d 704, 708 (Ill. App. Ct. 1996). However, Chicago Title's acts "will not constitute a proximate cause of [Founders Bank's] injuries if some intervening act supersedes" Chicago Title's conduct, and such an act or acts were not foreseeable to Chicago Title. *Mack v. Ford Motor Co.*, 669 N.E.2d 608, 613 (Ill. App. Ct. 1996).

Regarding all claims, the Court finds that the jury had sufficient evidence to award damages less than the sum of the deficiency judgments. The result of Chicago Title's wrongful conduct was that Founders Bank funded loans for the four subject properties at higher amounts than it would have but for Chicago Title's acts and omissions. For all four claims, the only damages that may be awarded are those that flow as a proximate result of Chicago Title's conduct. There was sufficient evidence presented by Chicago Title for the jury to have concluded that unforeseeable acts following the close of the transactions impaired two of the properties' value. In particular, the jury certainly could have found that it was unforeseeable to Chicago Title that, following the close of the transactions, the property owners would undertake construction that would diminish the properties' value, and that Founders Bank was forced to make lower credit bids than it would have absent that diminishment in value, which in turn increased the amounts of the deficiency judgments. In any case, it is not this Court's place to second-guess the jury's damages figure. The jury was entitled to assess the evidence, including evidence of a downturn in the housing market, and arrive at whatever damages figure it felt appropriate. *See Purnell v. Godinez*, No. 93 C 7107, 1999 WL 199633, at *2 (N.D. Ill. 1999) ("The court cannot second-guess the jury's credibility determinations and cannot disturb the jury's factual findings unless the evidence adduced at trial leads only to one conclusion.").

While there was sufficient evidence to support the jury's decision to award damages less than the sum of the deficiency judgments, for two of the properties, the jury actually awarded damages slightly above their respective deficiency judgments. For the 5408-5410 North Campbell property, the deficiency judgment was $177,466.62 yet the jury awarded $180,000, and for the 5412-5414 North Campbell property the deficiency judgment was $188,176.94 but the jury awarded $190,000. Chicago Title requests that the Court reduce the damages award to conform to

the deficiency judgments. The Court interprets Chicago Title's request as its own Rule 59(e) motion to amend the judgment and grants the request based on its prior ruling on Chicago Title's motion for partial summary judgment. In that ruling, the Court held that the FDIC could not recover more than the deficiency judgment for each subject property. *FDIC v. Chi. Title Ins. Co.*, No. 12-cv-05198, 2015 WL 5276346 (N.D. Ill. Sept. 9, 2015). Applying that ruling here, the Court concludes that the FDIC was not entitled to the combined $4,356.44 in excess of the deficiency judgments that the jury awarded.

In sum, because the jury had sufficient evidence to award damages less than the sum of the four deficiency judgments, the Court denies the FDIC's motion for judgment as a matter of law or motion to amend the judgment. On the other hand, the jury was not entitled to award damages greater than the deficiency judgment for each property. Thus, as to the 5408-5410 North Campbell and 5412-5414 North Campbell properties, the judgment is altered so as to conform the damages to the deficiency judgments. As a result, the FDIC's total damages award is reduced to $1,445,643.56.

### B.     Prejudgment Interest

The FDIC next argues that it should be awarded prejudgment interest under either the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(l), or Illinois law.

Prejudgment interest is meant "to put a party in the position it would have been in had it been paid immediately. It is designed to ensure that a party is fully compensated for its loss." *Am. Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003). In actions brought by the FDIC against a party providing services to an insured depository institution, "recoverable damages determined to result from the improvident or

otherwise improper use or investment of any insured depository institution's assets shall include principal losses and appropriate interest." 12 U.S.C. § 1821(l). Courts have generally agreed that appropriate interest includes prejudgment interest. *E.g.*, *Grant Thornton, LLP v. FDIC*, 435 F. App'x 188, 207 (4th Cir. 2011); *Comeau v. Rupp*, 810 F. Supp. 1172, 1180 (D. Kan. 1992).

The FDIC contends that § 1821(l) makes an award of prejudgment interest mandatory, pointing to the language in the statute that recoverable damages "***shall include*** principal losses and appropriate interest." 12 U.S.C. § 1821(l) (emphasis added). However, that understanding of the statute essentially reads out the word "appropriate." *See Grant Thornton*, 435 F. App'x at 207 ("[W]hile congress used the language 'shall,' it also included the word 'appropriate' for a purpose."). Instead, the Court concludes that the word appropriate "is best read as a limitation as to when prejudgment interest should be provided." *Id.* at 208.

The parties disagree as to what source of law the Court should look in determining the appropriateness of prejudgment interest here. Chicago Title contends that the Court should determine the appropriateness of prejudgment interest only by reference to Illinois law. In response, the FDIC contends that appropriateness is governed by Seventh Circuit precedent affording a presumption of prejudgment interest to victims of federal law violations. *See Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). Indeed, this case arises under the Court's federal-question jurisdiction pursuant to 12 U.S.C. § 1819(b)(2)(A), which states, with one exception not applicable here, that "all suits of a civil nature at common law or in equity to which [the FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States." Nonetheless, the FDIC brought only state law claims against Chicago Title, and thus the jury did not find (and could not have found) that Founders Bank was a victim of federal law violations.

Moreover, as receiver for Founders Bank, FIRREA "places the FDIC in the shoes of the insolvent [financial institution], to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise." *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994). The FDIC cannot point to any provision in FIRREA that provides for the application of federal law other than § 1821(l) itself, which does not clearly provide for the application of federal common law when determining the propriety of prejudgment interest. Indeed, numerous federal courts have turned to state law in determining whether prejudgment interest is appropriate. *E.g.*, *Grant Thornton*, 435 F. App'x at 207–08; *FDIC v. Oldenburg*, 34 F.3d 1529, 1557 (10th Cir. 1994); *Fed. Savs. & Loan Ins. Corp. v. Tex. Real Estate Counselors, Inc.*, 955 F.2d 261, 270 (5th Cir. 1992); *see also FDIC v. Key Fin. Servs., Inc.*, No. 89-2366-DPW, 1999 WL 34866812, at *11 (D. Mass. Dec. 23, 1999) ("FIRREA does not provide a rate of prejudgment interest, and as the Supreme Court stated with respect to the Act, 'matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law.'" (quoting *O'Melveny*, 512 U.S. at 85)).

This Court therefore looks to Illinois law for guidance in exercising its discretion to award prejudgment interest. In Illinois, "prejudgment interest is generally recoverable only when an express agreement between the parties exists or if it is authorized by statute." *Movitz v. First Nat'l Bank of Chi.*, 982 F. Supp. 566, 568 (N.D. Ill. 1997). However, in proceedings brought in equity "a court may be justified in awarding interest based on equitable grounds." *Kouzoukas v. Ret. Bd. of Policemen's Annuity & Benefit Fund of City of Chi.*, 917 N.E.2d 999, 1015 (Ill. 2009). The FDIC does not assert that there is any contractual or statutory basis for the award of prejudgment interest here. Thus, the Court confines its inquiry to possible equitable bases for awarding prejudgment interest.

The FDIC correctly observes that because breach of fiduciary duty is an equitable claim in Illinois, this Court has the power to make an equitable award of prejudgment interest. *See Prignano v. Prignano*, 934 N.E.2d 89, 109 (Ill. App. Ct. 2010). The rationale for awarding prejudgment interest for breach of fiduciary duty "is to make the injured party complete by forcing the fiduciary to account for profits and interest he gained by the use of the injured party's money." *In re Estate of Wernick*, 535 N.E.2d 876, 888 (Ill. 1989). Prejudgment interest thus "make[s] the plaintiff whole by placing him in the position he would have been had he had the opportunity to use the funds wrongly retained by the defendant." *Neumann v. Neumann*, 777 N.E.2d 981, 985 (Ill. App. Ct. 2002). The common thread in cases awarding prejudgment interest for breaches of fiduciary duty is that the defendant wrongfully withheld money. *See Movitz*, 982 F. Supp. at 570 ("Generally, courts grant an equitable award of prejudgment interest when they find that the fiduciary has wrongfully withheld money from the injured party."). However, here, there is no evidence that Chicago Title wrongfully withheld the escrowed funds or used those funds for its own purposes. Instead, Chicago Title was an intermediary that passed those funds to the parties in the higher-priced transactions.

Although the FDIC does not appear to dispute Chicago Title's contention that it did not wrongfully retain or profit from Founders Bank's funds, it argues that the jury's finding of willful and wanton conduct provides an equitable basis to award prejudgment interest. Of course, this Court has now vacated the jury verdict with respect to the specific issue of Chicago Title's willful and wantonness. And in any case, the Court does not believe that a finding on retrial of intentional willful and wanton conduct, by itself, would warrant an award of prejudgment interest. The Illinois Supreme Court has been clear that prejudgment interest is not intended to be "a sanction against the defendant." *Wernick*, 535 N.E.2d at 888. Accordingly, Illinois courts have found that

bad conduct alone is not sufficient. Instead, the cases suggest that at most, "some element of bad conduct must be present before an equitable award of prejudgment interest will be made." *E.g.*, *Nat'l Union Fire Ins. Co. of Pitt. v. DiMuci*, 34 N.E.3d 1023, 1048 (Ill. App. Ct. 2015). Thus, notwithstanding the grant of a new trial on the willful and wanton conduct issue, the Court is able to conclude at this time that the FDIC is not entitled to prejudgment interest. The FDIC's motion for judgment as a matter of law or for amended judgment is therefore denied.

### III. Chicago Title's Motion for Setoff

Chicago Title also seeks to reduce the damages award against it by $500,000, which was the amount that former co-defendant PVS agreed to pay the FDIC to settle the claims against it. However, the FDIC argues that Chicago Title is not entitled to a set off because it has not carried its burden of proving that any portion of the settlement sum is attributable to the same injury for which Chicago Title was found liable.

Section 2(c) of the Illinois Joint Tortfeasor Contribution Act ("JTCA") governs setoffs in Illinois, and it provides:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or covenant, or in the amount of the consideration actually paid for it, whichever is greater.

740 ILCS 100/2(c). The JTCA "reflects the long-recognized principle that a plaintiff shall have only one satisfaction for an injury." *Pasquale v. Speed Prods. Eng'g*, 654 N.E.2d 1365, 1381 (Ill. 1995). Accordingly, "a settlement release given in good faith to one tortfeasor . . . reduces 'the recovery' on any claim against them to the extent of the amount stated in the release or actually paid for it." *Id.* "Generally, a nonsettling party seeking a setoff bears the burden of proving what

portion of a prior settlement was allocated or attributable to its share of the liability." *Thornton v. Garcini*, 928 N.E.2d 804, 813 (Ill. 2010).

In determining whether there is a right to contribution under the JTCA, the Court "must first consider whether all the codefendants were liable in tort." *Giordano v. Morgan*, 554 N.E.2d 810, 813 (Ill. App. Ct. 1990). The fact that the FDIC asserted a contract claim as well as a tort claim against both PVS and Chicago Title, however, does not defeat Chicago Title's right to contribution. Rather, "[l]iability in tort, governing the right of contribution among tortfeasors, has been construed to mean potential tort liability." *Joe & Dan Int'l Corp. v. U.S. Fid. & Guar. Co.*, 533 N.E.2d 912, 918 (Ill. App. Ct. 1988) (internal quotation marks and citation omitted). And potential tort liability "is determined at the time of the injury out of which the right to contribution arises, and not at the time the action for contribution is brought." *Doyle v. Rhodes*, 461 N.E.2d 382, 387 (Ill. 1984). Given that the FDIC asserted a negligent misrepresentation claim along with a breach of contract claim against Chicago Title and PVS, both were potentially liable in tort.

Next, the Court must find that Chicago Title and PVS's "liability arose out of the same injury." *Giordano*, 554 N.E.2d at 813. The JTCA "provides little guidance as to what constitutes the 'same injury.'" *Pasquale*, 654 N.E.2d at 1382. What is clear is "that the entire amount of a settlement which compensated for a single indivisible injury can be set off against a recovery based on that injury, notwithstanding the plaintiff's assertion of two distinct ***theories*** of recovery." *Id.* (emphasis in original). Conversely, there is no right to a setoff from "a recovery for injuries 'separate and distinct' from those for which the plaintiff was already compensated through settlement." *Id.*

The FDIC's opposition to a setoff is predicated on its assertion that this Court, in ruling on the motion for partial summary judgment, found that Founders Bank suffered two distinct injuries.

First, according to the FDIC, was the injury that occurred at the time the four loans were originated. It is undisputed that Chicago Title and PVS both contributed to that injury, which was equal to the sum of the four deficiency judgments. In addition, the FDIC contends that Founders Bank suffered a foreclosure injury. That injury was purportedly caused by PVS's flawed second set of appraisals, upon which Founders Bank detrimentally relied to submit inflated credit bids for the four properties at the foreclosure sale. Those inflated credit bids, in turn, caused or increased Founders Bank's losses when it finally sold the properties for less than its credit bid.

However, the FDIC misconstrues the Court's ruling on the motion for partial summary judgment. The Court did not hold that there were two injuries. While the decision addressed and rejected the FDIC's arguments that Chicago Title was responsible for losses attributable to PVS's second set of appraisals, it never adopted a two-injury framework. Indeed, the Court noted that PVS was not involved in the motion for partial summary judgment and thus the Court expressed "no opinion regarding whether the full credit bid rule bars recovery in excess of the deficiency judgments from PVS." *Chicago Title*, 2015 WL 5276346, at *8. All this Court's decision did was establish a limit to the damages the FDIC could seek from Chicago Title. It did not bifurcate Founders Bank's injury.

Moreover, the second amended complaint does not make any allegations concerning purported post-foreclosure injuries. The only basis for PVS's liability alleged in the second amended complaint is PVS's conduct with respect to the first set of appraisals, which led Founders Bank to fund loans it would not otherwise have funded. (*See* Second Am. Compl. ¶¶ 175, 180.) That is the same injury alleged to have been caused by Chicago Title's conduct. (*See id.* ¶¶ 137, 153.) The second amended complaint does not even mention a second set of appraisals. Because the motion for partial summary judgment did not add a second injury into the action,

Chicago Title had no burden with respect to proving the proper allocation of PVS's settlement, since the FDIC's recovery from PVS was attributable to the same single injury caused by Chicago Title. Consequently, Chicago Title is entitled to set off PVS's settlement amount from the jury's damages award.

## CONCLUSION

For the foregoing reasons, Chicago Title's motion for a new trial (Dkt. No. 398), is granted. The Court grants a new trial limited to the damages issue of whether Chicago Title's conduct with respect to the breach of fiduciary duty, negligence, and negligent misrepresentation claims was intentionally willful and wanton. In addition, Chicago Title's motion for a setoff (Dkt. No. 391) is granted and the FDIC's motion for entry of judgment in the sum of $3,790,695 plus prejudgment interest (Dkt. No. 387) is denied. In addition, the jury's damages verdict against Chicago Title on the breach of contract claim is reduced to $1,445,643.56 based on the deficiency judgments and the Court's prior ruling.

ENTERED:

Dated: March 31, 2019

Andrea R. Wood
United States District Judge